**INSURANCE COMPANY OF NORTH AMERICA (Assignee of Stainless, Inc. & Using its Name), Appellant,**

**v.**

**SECURITY INSURANCE COMPANY, Appellee.**

**No. 01–88–01141–CV.**

Court of Appeals of Texas, Houston (1st Dist.).

May 24, 1990.

**408**

Kenneth R. Wynne, Craig L. Stahl, Houston, for appellant.

John A. Mackintosh, Jr., Dallas, Laurie Kratky Dore', Austin, for appellant.

Before SAM BASS, DUGGAN and HUGHES, JJ.

## OPINION

DUGGAN, Justice.

Insurance Company of North America ("INA") appeals from a summary judgment that denied it the right to pursue an assigned claim against appellee, Security Insurance Company ("Security"). INA characterizes its claim against Security as a "classic" *Stowers*[1] action. Security describes the claim as a veiled attempt by a settling tortfeasor's insurer to obtain reimbursement from its insured's nonsettling joint tortfeasor. In a single point of error, INA asserts the trial court erred in granting summary judgment as a matter of law. We affirm.

In 1982, Stainless, Inc. ("Stainless") contracted with Channel 20 Enterprises, Inc. to fabricate portions of a 2,000–foot television tower to be erected in Fort Bend County, Texas. On December 7, 1982, five workmen were killed when the tower collapsed.

Two groups, the wrongful death claimants and the survival action claimants, sued Stainless in federal court (the "Channel 20 Litigation").[2]

After a jury verdict, the federal court awarded the wrongful death claimants a $16,000,000 judgment against Stainless. The court also granted the survival action claimants a new trial, severing the survival action under a new cause number. The combined limits of Stainless' liability insurance coverage, provided by Security, Covenant Mutual Insurance Company ("Covenant"), and Integrity Insurance Company ("Integrity"), were $6,433,000.

During the Channel 20 Litigation, the plaintiffs offered to settle the case for Stainless' combined liability insurance policy limits of $6,433,000. Stainless' counsel, including the law firm of Crain, Caton, James & Womble ("Crain, Caton"), declined the offer. Stainless subsequently suffered the $16,000,000 excess judgment, giving rise to Stainless' *Stowers* claims against its three insurers, including Security, and a legal malpractice claim against Crain, Caton.

After entry of judgment in the Channel 20 Litigation, Stainless and its three liability carriers (Security, Covenant, and Integrity) entered into a written settlement agreement (the "Channel 20 Settlement Agreement") with the wrongful death claimants (the "Judgment Creditors") and the survival action claimants, who had been granted a new trial.

The Channel 20 Settlement Agreement provided: The survival action claimants released Stainless in exchange for $6,433,000 —the limit of Stainless' liability coverage. Stainless assigned the Judgment Creditors all causes of action which it might have against any insurance carrier arising out of the Channel 20 Litigation, and agreed to sue Crain, Caton for malpractice and assign the suit to the Judgment Creditors. In turn, the Judgment Creditors agreed (1) not to execute the $16,000,000 judgment

---

1. *G.A. Stowers Furniture Co. v. American Indem. Co.,* 15 S.W.2d 544 (Tex.Comm'n App.1929, holding approved).

2. *Channel 20, Inc. v. World Wide Tower Serv., Inc.,* 607 F.Supp. 551 (S.D.Tex.1985).

against Stainless until resolution of the malpractice suit against Crain, Caton; and (2) to allow any proceeds recovered from the assigned malpractice suit to discharge Stainless from further liability on the judgment. Finally, although the Channel 20 Settlement Agreement is unclear and inconsistent on this issue, the Judgment Creditors purportedly covenanted not to sue Security, Integrity, and Covenant on any of Stainless' assigned claims arising out of the Channel 20 Litigation.

On June 28, 1985, pursuant to the Channel 20 Settlement Agreement, Stainless sued Crain, Caton in state district court ("the Crain, Caton malpractice suit").[3] Cigna Insurance Company ("Cigna"), which provided Crain, Caton's liability insurance coverage, retained legal counsel to defend Crain, Caton in the malpractice suit.

Following its answer, on October 10, 1985, Crain, Caton petitioned for a declaratory judgment, and filed counterclaims and third-party actions in the malpractice suit. Crain, Caton named Stainless' three liability insurance carriers (Integrity, Covenant, and Security) as third-party defendants, and claimed that it was entitled to indemnity or contribution from them if it was held liable for all or any part of the Channel 20 Litigation judgment.

On October 10, 1985, pursuant to the Channel 20 Settlement Agreement, Stainless assigned the Judgment Creditors its right, title, and interest in the claims asserted against Crain, Caton.

In early 1986, the Crain, Caton malpractice suit was settled ("the Crain, Caton Settlement"). Parties to this settlement were: (1) Stainless and two of its liability insurers, Covenant and Integrity; (2) the Channel 20 Judgment Creditors, as Stainless' assignees under the Channel 20 Settlement Agreement, and the survival action claimants; (3) Crain, Caton; and (4) of particular importance to the present suit, appellant, INA, on behalf of Crain, Caton's insurer, Cigna. Appellee, Security, was not a party to the Crain, Caton settlement. INA, not Cigna, executed the Crain, Caton Settlement on Crain, Caton's behalf. At all times relevant to these actions, Cigna and INA were affiliated companies, each being a wholly owned subsidiary of INA Financial Group.

Cigna paid a significant sum of money[4] in the Crain, Caton Settlement on behalf of its insured, Crain, Caton, to obtain the insured's full and final release from the Judgment Creditors, the survival action claimants, and Stainless from all liability arising from the Channel 20 Litigation and its aftermath. Although *Cigna* made the payment, *INA* executed the settlement agreement and release on Crain, Caton's behalf. In turn, the Judgment Creditors, the survival action claimants,[5] and Stainless[6] assigned INA all causes of action they may have had against Security related to the Channel 20 Litigation.

With the Channel 20 Litigation and the Crain, Caton Settlement as background, INA sued Security in Stainless' name in April 1987. After answering Security's requests for admissions and acknowledging that it was the only real party in interest, INA amended its complaint to style itself "Assignee of Stainless, Inc. and using its name." INA alleged that it was entitled to assert Stainless' *Stowers* action against Security because the Judgment Creditors had assigned the action to INA in March 1986, pursuant to the Crain, Caton Settlement.

On August 25, 1988, Security moved for summary judgment against INA on nine grounds. The trial court granted the motion in favor of Security but did not specify a particular ground. This appeal follows.

---

**3.** *Stainless, Inc. v. Crain, Caton, James & Womble,* No. 85–38073 (Dist.Ct. of Harris County, 165th Judicial Dist. of Texas, filed June 28, 1985).

**4.** The amount of the Crain, Caton settlement was subject to an agreed protective order.

**5, 6.** The survival action claimants' and Stainless' participation in the assignment to INA was nominal. In the Channel 20 Settlement Agreement, the survival action claimants had settled their full claims against Stainless in exchange for the $6,433,000 policy limits payment, and Stainless had assigned its *Stowers* claim against Security to the Judgment Creditors.

■ Where a trial court enters a summary judgment order that does not specify the particular ground on which it is based, the party appealing must show that each independent argument alleged in the motion for summary judgment is insufficient to support the trial court's order. *Tilotta v. Goodall*, 752 S.W.2d 160, 161 (Tex.App.—Houston [1st Dist.] 1988, writ denied); *McCrea v. Cubilla Condominium Corp.*, 685 S.W.2d 755, 757 (Tex.App.—Houston [1st Dist.] 1985, writ ref'd n.r.e.). When the trial court's order does not specify the grounds relied on for its ruling, summary judgment will be affirmed if any of the theories advanced are meritorious. *See Borg-Warner Acceptance Corp. v. C.I.T. Corp.*, 679 S.W.2d 140, 142 (Tex.App.— Amarillo 1984, writ ref'd n.r.e.).

As its first ground for summary judgment, Security asserts that the case is governed by the "doctrine of nonreimbursement," the rule that a settling tortfeasor has no right to recover contribution from a nonsettling joint tortfeasor.

■ The Texas Supreme Court has held that when a co-defendant settles with a plaintiff, the settlement extinguishes the settling defendant's right of contribution from a nonsettling joint tortfeasor. *Beech Aircraft Corp. v. Jinkins*, 739 S.W.2d 19, 22 (Tex.1987); *see also Bonniwell v. Beech Aircraft Corp.*, 663 S.W.2d 816, 819 (Tex. 1984). A settling joint tortfeasor may not preserve contribution rights, or take an assignment of a plaintiff's cause of action, to seek reimbursement from a nonsettling joint tortfeasor. *International Proteins Corp. v. Ralston–Purina Co.*, 744 S.W.2d 932, 934 (Tex.1988). In *International Proteins*, the supreme court said

In *Beech Aircraft Corp. v. Jinkins*, this court held that a joint tortfeasor could settle only its proportionate share of a common plaintiff's cause of action. We said that a settling defendant did not have a right to contribution at common law, *Duncan v. Cessna Aircraft Co.*, 665 S.W.2d 414 (Tex.1984) or under the comparative negligence statute [§ 33.001 et seq.], and could not create one by purchasing the plaintiff's entire cause of action. This is precisely what Purina argues it has done in the present case, although it chooses to define its right to reimbursement under the settlement agreement as a right of direct action rather than a right of contribution.

As a general rule a cause of action may be assigned, but it is contrary to public policy to permit a joint tortfeasor the right to purchase a cause of action from a plaintiff to whose injury the tortfeasor contributed. Under *Jinkins*, Purina could settle only its proportionate share of liability and could not preserve a right to contribution by taking an assignment of [the plaintiff's] cause of action.

744 S.W.2d at 934 (citations omitted).

INA responds that the trial court erred as a matter of law in resolving this "classic" *Stowers* suit by applying the law of contribution. INA asserts that it did not sue Security for contribution for Crain, Caton's alleged malpractice, but rather on a *Stowers* claim which it obtained from Stainless by assignment from the Judgment Creditors.

■ INA offers three arguments. First, INA argues that its rights in the present suit do not derive from Crain, Caton, that it does not seek contribution on the malpractice claim, and that it therefore does not stand in Crain, Caton's shoes. On the contrary, INA asserts that it is an independent third party pursuing an assigned claim from Stainless which is entirely separate.

Second, INA argues that it was not involved in the Channel 20 Litigation, and is therefore not jointly responsible for Stainless' damage, regardless of Cigna's potential liability as Crain, Caton's insurer.

Third, INA urges that it is maintaining Stainless' assigned *Stowers* claim rather than a "reimbursement" claim for the amount paid in the Crain, Caton case. INA asserts that it paid nothing in the Crain, Caton case for which to be reimbursed.

INA's arguments are rebutted by two findings which are dispositive of this appeal.

First, Crain, Caton and the three insurers (Security, Covenant, and Integrity) were

positioned as joint tortfeasors against Stainless in the Crain, Caton malpractice case. The description of the actions against the insurers as "*Stowers* negligence," and the description of the claim against the attorney as legal malpractice, are distinctions without a difference. The essence of Stainless' complaint against both its insurers and its attorneys is that each negligently failed to settle the Channel 20 Litigation within Stainless' policy limits.

Crain, Caton recognized the irrelevance of the terms "*Stowers* negligence" and "legal malpractice" when it was initially sued by Stainless and named its three insurers as third parties, seeking indemnity and contribution if it was held liable. Understandably, Crain, Caton's allegations of negligence against Stainless' three liability insurers are virtually identical to the allegations INA now urges against Security. Both INA's present *Stowers* action against Security and the Crain, Caton malpractice case involve a common plaintiff (Stainless), seeking compensation for a common injury (the Channel 20 Litigation judgment), based on virtually identical allegations of negligence (failure of the three insurers and counsel to settle the Channel 20 Litigation within Stainless' policy limits).

Second, Cigna and INA have identical interests, and are both so intertwined with Crain, Caton that they effectively stand in the law firm's shoes for purposes of this dispute. Although Cigna paid the Crain, Caton Settlement, INA was expressly named in the settlement agreement as Crain, Caton's liability insurer, and was designated as a "settling" party with its insured, Crain, Caton. The settlement agreement provides that INA, not Cigna, (1) executed the agreement as Crain, Caton's "insurer"; (2) released all affirmative claims and defenses that either INA or Crain, Caton had against any party to the settlement agreement; (3) obtained for Crain, Caton and for itself the Judgment Creditors' and survival action claimants' express release; (4) agreed to indemnify other settling parties for third-party liability to Security; and (5) received the Judgment Creditors' assignment of Stainless' *Stowers* claim against Security.

In sum, the summary judgment evidence shows not only that INA and Cigna are affiliated, wholly-owned corporate subsidiaries of a common corporate parent, but also that they acted in the Crain, Caton Settlement with an interwoven identity of interests. The assignment of Stainless' *Stowers* claim against Security to INA was not a "direct" assignment from the Judgment Creditors, and INA is not "an independent third party" in its pursuit of the assigned claim. Cigna's cash payment to the Judgment Creditors obtained both Crain, Caton's release *and* the assignment to INA, Cigna's cooperating affiliate, of Stainless' *Stowers* action against Security. By obtaining Stainless' assignment, Cigna and INA effectively obtained a vehicle for contribution against Crain, Caton's joint tortfeasor, Security, and a means thereby to recoup at least part of Cigna's payout on Crain, Caton's behalf.

Applying *International Proteins,* we hold that a settling tortfeasor (Crain, Caton and those in privity with it, Cigna and INA) may not preserve a right to contribution against a nonsettling joint tortfeasor (Security) by purchasing an assignment of a cause of action (negligent failure to settle a claim within insurance coverage limits, whether labelled *Stowers* negligence or legal malpractice) from the common plaintiff (Stainless or its assignees, the Judgment Creditors).

Because Security's first argument in support of its motion for summary judgment provides a sufficient basis to uphold the trial court's order, we need not consider Security's remaining arguments.

The judgment is affirmed.