NO. 07-01-0115-CV



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL A



MARCH 13, 2002



______________________________




TRACY COOK-PIZZI AND HUSBAND, JOE PIZZI, APPELLANTS



V.


 

 VAN WATERS & ROGERS, INC., A SUBSIDIARY OF UNIVAR, ET AL., APPELLEES



_________________________________



FROM THE 99TH DISTRICT COURT OF LUBBOCK COUNTY;



NO. 94-546,148-B; HONORABLE MACKEY K. HANCOCK, JUDGE



_______________________________




Before BOYD, C.J., and REAVIS and JOHNSON, JJ.



 Tracy-Cook Pizzi and her husband Joe Pizzi present one issue containing five sub-issues challenging the summary judgment (1) that they take nothing on their claim for
personal injuries under the Deceptive Trade Practices-Consumer Protection Act (2) (hereafter
DTPA) and claims of negligence and products liability against Van Waters and Rogers,
Inc., Degussa Corporation, E. I. Du Pont De Nemours and Company, Du Pont Chemicals,
a division of E. I. Du Pont De Nemours and Company, and Du Pont Chemical and Energy
Operations, Inc. Based upon the rationale expressed herein, we affirm.

 Tracy Cook-Pizzi, an ICU nurse employed by St. Mary of the Plains Hospital, and
her husband, Joe Pizzi, brought the underlying action for injuries she claims were caused
by fumes from a sink drain in an ICU room of the Hospital. Tracy claims the fumes were
generated in March 1992, when one of her co-employees at the Hospital poured
chemicals, including hydrogen peroxide, into a clogged sink with water standing in it to
clean the drain.

 Before the occurrence, the Hospital employed James McDonald, a waste water
consultant, d/b/a Controlled Aqua Systems, (3) to study and submit a waste water treatment
study for the Hospital in 1991. On April 30, 1991, he submitted a written study to the
Hospital. According to the report, a process by which ozone is added directly to the waste
stream produced by an on-site generator and a process that adds a 50% hydrogen
peroxide solution to the waste stream in the sump in the basement of the Hospital were
considered. Both procedures oxidize material or solids in the waste water stream so that
the oxidized material remains fluid and free flowing. McDonald preferred the hydrogen
peroxide process because (1) the setup cost was substantially less than the cost of
installing a DAF unit required for ozonization, (2) it would not require any more labor than
the existing procedure of applying an enzyme solution, and (3) containers of the hydrogen
peroxide solution can be carried to other areas of the Hospital to maintain the smaller
sewer lines. (Emphasis added). Several on-site jar tests were conducted of effluent
samples to confirm, among other things, that very high concentrations of the hydrogen
peroxide solution would not generate heat or any condition that would create a hazardous
condition, and the results of the analysis conducted by a testing laboratory were provided
to the Hospital. 

 McDonald also conducted an in-service training program and provided an audio-visual training tape which was furnished by Degussa. The report reflects that employee
participation was good and a test was given to all employees after the presentation. The
report contained the following warning:

 It may sound redundant, but when personnel are using Hydrogen Peroxide
Solutions, IT IS MANDATORY THAT ALL THE SAFETY AND HANDLING
PROCEDURES that have been presented be followed EXACTLY!


(Emphasis in original). According to a letter dated May 2, 1991, from McDonald to Jim
Price, Director of Plant Operations for the Hospital, during a casual visit at a local store, 
Price told McDonald the Hospital had tried using hydrogen peroxide to clean a clogged
drain in a sink located in the kitchen. McDonald's letter concluded:

 I further reminded you that while I did not recommend the use of Hydrogen
Peroxide in drains, it would clean them out. Personnel must be careful not
to use any other chemicals either before or after the addition of the Hydrogen
Peroxide. 


By his deposition, McDonald testified that he did not approve of the use of hydrogen
peroxide in sink drains, but because of pressure from the Hospital Director of Plant
Operations, he did write guidelines for pouring hydrogen peroxide in drains with smaller
pipes than sewer pipe. Du Pont and Degussa supplied hydrogen peroxide to Van Waters
in bulk and Van Waters marked the chemical in 55-gallon drums bearing a Van Waters
label and sold it to the Hospital. Du Pont and Degussa provided material safety data
sheets (MSDS) (4) to Van Waters and these sheets and the Van Waters sheets were
provided to the Hospital. 

 Because multiple parties are involved, the grounds for the three motions for
summary judgment are not uniform, and the claims against Du Pont, Degussa, and Van
Waters are not common, we briefly summarize the claims against each party, the grounds
of the motions, and posture of the case before commencing our consideration of the issues
presented. After alleging that Tracy was exposed to fumes produced after hydrogen
peroxide was poured into a sink drain in an ICU room, by a paragraph in their fourth
amended original petition, the Pizzis sought damages based on theories of strict liability,
negligence, breach of warranty (specifically for a particular purpose), and section 17.46(b)
(5) and (23) of the DTPA. (5) All the Pizzis' claims were based on their contention that Du
Pont, Degussa, and Van Waters were required to provide adequate MSDS sheets to Tracy
and her employer and that they failed to adequately warn Tracy of the dangers of hydrogen
peroxide. (6) Also, the Pizzis allege that Degussa and Van Waters (not Du Pont) knew or
should have known of the particular purpose for which the chemical was to be used at the
Hospital, but failed to warn McDonald and the Hospital of the dangers, thereby breaching
their warranty of fitness for a particular purpose. (7) 

 Presenting similar but not entirely common defenses, Van Waters, Degussa, and
Du Pont filed their motions for summary judgment. As grounds they alleged:


Grounds of Motions for Summary Judgment



Degussa

Du Pont
Van Waters
a. Pizzis' claims for negligence
and strict liability should be
denied because the product's use
was not an intended or
foreseeable use.

b. Pizzis' claims for breach of
warranty of fitness for particular
purpose fails because there is no
evidence (1) of the product's
intended use, (2) that Degussa
knew of the Hospital's
unforeseeable use, and (3) that
the Hospital relied on Degussa to
select a drain cleaner.

c. No evidence that Tracy was a
consumer pursuant to the DTPA. 

d. Degussa adopted all of Du
Pont's grounds.

Motion based on Rule 166a (b)
and (i) of the Texas Rules of Civil
Procedure. 
a. No evidence that Pizzis are
consumers.

b. Using industrial strength hydrogen
peroxide as a drain cleaner is not an
intended or reasonably foreseeable
use of the product.

c. Pizzis do not allege that
defendant knew or should have
known and no evidence that
defendant knew of the Hospital's
unforeseeable use or that the
Hospital relied on defendant to
select a drain cleaner.

d. Pizzis' negligence and strict
liability claims should be denied
because Van Waters and the
Hospital were sophisticated
commercial purchasers of industrial
strength hydrogen peroxide.

e. Pizzis cannot prove that
defendant sold the product which
allegedly harmed plaintiff or had any
relation to that product.

Motion based on Rule 166a (b) and
(i) of the Texas Rules of Civil
Procedure.
a. No evidence that Tracy was a
consumer.

b. Pizzis' negligence and strict liability
claims should be denied because
using industrial strength hydrogen
peroxide as a drain cleaner is not an
intended or reasonably foreseeable
use of the product.

c. Pizzis' claims for breach of
implied warranty of fitness for a
particular purpose should be denied
because there is no evidence that
defendant knew of the Hospital's
unforeseeable use or that the
Hospital relied on defendant to select
a drain cleaner. 

d. Pizzis' negligence and strict
liability claims should be dismissed
because the Hospital was a
sophisticated commercial purchaser
of industrial strength hydrogen
peroxide.

Motion based on Rule 166a (b) and
(i) of the Texas Rules of Civil
Procedure.


Although the Pizzis' claims against Du Pont, Degussa, and Van Waters were not common
and the three motions for summary judgment were not uniform, by one response the Pizzis
presented their issues in opposition to the motions for summary judgment and their issues
on appeal as follows:


Pizzis' response to all motions
Issues presented on appeal
(a) Plaintiff was a consumer under the DTPA.
(a) The Hospital's use of hydrogen peroxide was
foreseeable and not misuse. In any event,
manufacturers have a duty to warn of risks
associated with misuse.

(b) Pouring hydrogen peroxide down the drain at the
Hospital was not an unforeseeable use and
defendants misstate the law of strict liability.

(b) Van Waters and Degussa breached their
warranty of fitness for a particular purpose. 
(c) Van Waters and Degussa knew or should have
known of the particular purposes for which the
hydrogen peroxide was to be used and that the
Hospital relied on them.

(c) The learned intermediary defense does not
absolve defendants.

(d) The Hospital was not a sophisticated user.
(d) Plaintiff was a consumer under the DTPA.
(e) Du Pont is a proper defendant under alternative
liability. 
(e) The hydrogen peroxide was manufactured by
either Degussa or Du Pont; it is their burden to
exculpate themselves.


The Pizzis did not present any objections in the trial court contending that the motions did
not conform to the requirements of Rule 166a (b), (c), and (i), or objections to the form or
admissibility of the summary judgment evidence in the trial court. Before commencing our
analysis, we first set out the appropriate standards of review.

Summary Judgment Standard of Review


Rule 166a(c)



 In reviewing a summary judgment, this Court must apply the standards established
in Nixon v. Mr. Property Management Co., 690 S.W.2d 546, 548-49 (Tex. 1985), which
are:

 1. The movant for summary judgment has the burden of showing that there
is no genuine issue of material fact and that it is entitled to judgment as a
matter of law.


 2. In deciding whether there is a disputed material fact issue precluding
summary judgment, evidence favorable to the non-movant will be taken as
true.


 3. Every reasonable inference must be indulged in favor of the non-movant
and any doubts resolved in its favor.

 

 For a party to prevail on a motion for summary judgment, he must conclusively
establish the absence of any genuine question of material fact and that he is entitled to
judgment as a matter of law. Tex. R. Civ. P. 166a(c). A movant must either prove all
essential elements of his claim, MMP, Ltd. v. Jones, 710 S.W.2d 59, 60 (Tex. 1986), or
negate at least one essential element of the non-movant's cause of action. Randall's Food
Markets, Inc. v. Johnson, 891 S.W.2d 640, 644 (Tex. 1995). Once the movant has
established a right to summary judgment, the non-movant has the burden to respond to
the motion for summary judgment and present to the trial court any issues that would
preclude summary judgment. City of Houston v. Clear Creek Basin Authority, 589 S.W.2d 
671, 678 (Tex. 1979); Barbouti v. Hearst Corp., 927 S.W.2d 37, 64 (Tex.App.--Houston [1st
Dist.] 1996, writ denied). Issues which the non-movant contends preclude the granting of
a summary judgment must be expressly presented to the trial court by written answer or
other written response to the motion and not by mere reference to summary judgment
evidence. McConnell v. Southside School Dist., 858 S.W.2d 337, 341 (Tex. 1993). Issues
not expressly presented to the trial court in writing shall not be considered on appeal as
grounds for reversal. Tex. R. Civ. P. 166a(c). Further, all theories in support of or in
opposition to a motion for summary judgment must be presented in writing to the trial court. 
Casso v. Brand, 776 S.W.2d 551, 553 (Tex. 1989). When a summary judgment does not
specify or state the grounds relied on, the summary judgment will be affirmed on appeal
if any of the grounds presented in the motion are meritorious. Carr v. Brasher, 776 S.W.2d
567, 569 (Tex. 1989); Insurance Co. Of N. Am. v. Security Ins., 790 S.W.2d 407, 410
(Tex.App.--Houston [1st Dist.] 1990, no writ).

No-Evidence Summary Judgment Standard of Review


Rule 166a(i)



 Rule 166a(i) entitled "No-Evidence Motion," provides that a party may move for
summary judgment on the ground that there is no evidence of one or more essential
elements of a claim or defense on which an adverse party would have the burden of proof
at trial. When a summary judgment does not specify or state the grounds relied on, it will
be affirmed on appeal if any of the grounds presented in the motion are meritorious. Carr,
776 S.W.2d at 569; Insurance Co. Of N. Am., 790 S.W.2d at 410. Where a motion is
presented under Rule 166a(i) asserting there is no evidence of one or more essential
elements of the non-movant's claims upon which the non-movant would have the burden
of proof at trial, the movant does not bear the burden of establishing each element of its
own claim or defense as under subparagraph (a) or (b). Rather, although the non-moving
party is not required to marshal its proof, it must present evidence that raises a genuine
fact issue on the challenged elements. See Tex. R. Civ. P. 166a, Notes and Comments.

 Because a no-evidence summary judgment is essentially a pretrial directed verdict,
we apply the same legal sufficiency standard in reviewing a no-evidence summary
judgment as we apply in reviewing a directed verdict. Roth v. FFP Operating Partners, 994
S.W.2d 190, 195 (Tex.App.--Amarillo 1999, pet. denied); Jackson v. Fiesta Mart, Inc., 979
S.W.2d 68, 70 (Tex.App.--Austin 1998, no pet.). Thus, our task as an appellate court is
to ascertain whether the non-movant produced any evidence of probative force to raise a
fact issue on the material questions presented. Id. We consider all the evidence in the
light most favorable to the party against whom the no-evidence summary judgment was
rendered, disregarding all contrary evidence and inferences. Merrill Dow Pharmaceuticals
v. Havner, 953 S.W.2d 706, 711 (Tex. 1997), cert. denied, 523 U.S. 1119, 118 S.Ct. 1799,
140 L.Ed.2d 939 (1998). A no-evidence summary judgment is improperly granted if the
non-movant presents more than a scintilla of probative evidence to raise a genuine issue
of material fact. Fiesta Mart, Inc., 979 S.W.2d at 70-71. More than a scintilla of evidence
exists when the evidence "rises to a level that would enable reasonable and fair-minded
people to differ in their conclusions." Havner, 953 S.W.2d at 711.





DTPA Claim (8)



 The Pizzis' claim under the DTPA is common to Degussa, Du Pont, and Van
Waters. By sub-issue D, the Pizzis contend the trial court erred in granting summary
judgment because Tracy was a "consumer" under the DTPA. We disagree. In order to
have standing to maintain their action under the DTPA, the Pizzis must demonstrate that
Tracy was a consumer of the goods or services of Degussa, Du Pont, and Van Waters as
the term is applied in section 17.45(4) of the DTPA, that she acquired the goods or
services by purchase or lease, and that the goods or services form the basis of their
complaint. Lukasik v. San Antonio Blue Haven Pools, 21 S.W.3d 394, 400 (Tex.App.--San
Antonio 2000, no pet.); Vinson & Elkins v. Moran, 946 S.W.2d 381, 406-07 (Tex.App.--Houston [14th Dist.] 1997, writ dism'd by agr.). Tracy's standing as a consumer is a
question of law. Hedley Feedlot, Inc. v. Weatherly Trust, 855 S.W.2d 826, 831
(Tex.App.-Amarillo 1993, writ denied); Metropolitan Life Ins. Co. v. Haney, 987 S.W.2d
236, 242 (Tex.App.--Houston [14th Dist.] 1999, pet. denied). Although the statute does not
require the consumer to be a direct purchaser, Kennedy v. Sale, 689 S.W.2d 890, 891-92
(Tex. 1985), the transaction must be specifically required by or intended to benefit the party
claiming consumer status. Lukasik, 21 S.W.3d at 401. Moreover, an incidental benefit to
an employee is not sufficient to create standing as a consumer. Brandon v. American
Sterilizer Co., 880 S.W.2d 488, 492 (Tex.App.--Austin 1994, no writ.). As a nurse working
for the Hospital, Tracy's status as a consumer is not determined by the existence of a
contractual relationship; rather, it is determined by the parties' relationship to the
transaction. See Arthur Andersen v. Perry Equipment Corp., 945 S.W.2d 812, 815 (Tex.
1997). 

 In Metropolitan Life, the court held that MetLife's primary purpose in developing and
selling software to its agents was not for the benefit of the agents, but was incidental to
MetLife's ultimate goal to increase the sale of its products. 987 S.W.2d at 243. 
Accordingly, an agent who bought the software was not a consumer under the DTPA. In
support of Tracy's status as a consumer, the Pizzis cite Kennedy v. Sale, 689 S.W.2d 890
(Tex. 1985), and contend the Hospital bought the hydrogen peroxide for Tracy's benefit;
however, they do not make any reference to the summary judgment evidence to support
such contention and we have found none. Applying the appropriate standard of review,
we conclude the summary judgment evidence presents no evidence to raise a genuine
issue of material fact of Tracy's status as a consumer. Sub-issue D is overruled as to Du
Pont, Degussa, and Van Waters.

Hospital Use to Clean Drains Foreseeable (Misuse)


and Learned Intermediary Defense


Du Pont and Degussa


 By sub-issue A, the Pizzis contend the Hospital's use of industrial strength hydrogen
peroxide was foreseeable and not misuse, and in any event, manufacturers have a duty
to warn of risks associated with misuse. (9) By sub-issue C, the Pizzis contend that the
learned intermediary defense does not absolve Du Pont, Degussa, and Van Waters. 
Because these issues involve similar issues and evidence, they will be considered
together. 

 We commence our analysis by noting that the Pizzis do not contend the Hospital 
based its decision to use the hydrogen peroxide on the recommendation of either Du Pont
or Degussa. Instead, they contend that "based on McDonald's recommendation, the
hospital used 50% and 35% hydrogen peroxide in the sewage sump and to maintain clear
sewer drain lines." Among other things, Du Pont (10) and Degussa alleged that the Pizzis'
claims of negligence and strict liability should be denied because Van Waters and the
Hospital were sophisticated commercial purchasers of industrial strength hydrogen
peroxide. Accordingly, citing Munoz v. Gulf Oil Co., 732 S.W.2d 62, 65 (Tex.App.--Houston
[14th Dist.] 1987, writ ref'd n.r.e), Du Pont and Degussa urged that they owed no duty to
warn the ultimate consumer. According to the Pizzis' response, "Van Waters is one of the
larger distributors of chemicals in the world with 104 locations in North America and Puerto
Rico." Van Waters maintained a tank farm in Dallas where it would repackage bulk
materials, such as hydrogen peroxide into 55-gallon drums with Van Waters labels and
then truck the materials to its branch in Odessa and elsewhere. Although the Pizzis
contended that the Hospital was not a sophisticated user, they did not contend that Van
Waters was not a sophisticated user. Moreover, by their appellate brief, the Pizzis
acknowledge that Van Waters passed along the warnings from Du Pont and Degussa and
had more knowledge regarding the dangers of hydrogen peroxide than McDonald. 
Because the issue of Van Waters's status as a learned intermediary and the resulting
defense were not expressly presented to the trial court by the Pizzis in their response or
otherwise, it may not be considered on appeal as grounds for reversal. Tex. R. Civ. P.
166a(c); Casso, 776 S.W.2d at 553. 

 Moreover, the Pizzis' claims of negligence and strict liability are premised on the
alleged duty of Du Pont and Degussa to adequately warn of potential misuse of their
products. Yet, by their argument, they acknowledge that Du Pont and Degussa did provide
MSDS sheets, which provided in part: 

Du Pont


 Decomposition: Contamination and heat may cause self-accelerating exothermic
decomposition with oxygen, gas and steam release that can cause dangerous pressures. 
Reacts dangerously with rust, dust, dirt, iron, copper, heavy metals or their salts (such as
mercuric oxide or chloride), alkalis and with organic materials (especially vinyl monomers).
. . . 

 Fire and Explosion Hazards

 Strong oxidizer. Contact with clothing or combustibles may cause fire. Contact with organic
liquids or vapors may cause immediate fire or explosion, especially if heated. Under certain
circumstances, detonation may be delayed. Oxygen released from hydrogen peroxide may
force organic or hydrogen vapors into an explosive range. Follow appropriate National Fire
Protection Association (NFPA) codes.

Degussa


 Danger! This product is a strong oxidizer which may release oxygen and promote the
combustion of flammable material. 

* * *



In addition to training given to Hospital maintenance personnel, by his letter of May 2,
1991, McDonald reminded the Hospital that he did not recommend that hydrogen peroxide
be used in drains. 

 According to the Pizzis, the hydrogen peroxide was poured into the drain by a
hospital employee. Even though the Pizzis do not allege that Tracy's injuries resulted from
her use of the chemical, they contend that Du Pont and Degussa had the duty to provide
her with adequate warning of hazards of the chemical by the MSDS sheets. However, 29
C.F.R. § 1910.1200 (b) provides in part: 

 (b) Scope and application. (1) this section requires chemical manufacturers
or importers to assess the hazards of chemicals which they produce or
import, and all employers to provide information to their employees about the
hazardous chemicals to which they are exposed, by safety data sheets, and
information and training. In addition, this section requires distributors to
transmit the required information to employers.


(Emphasis added). Although, the regulation requires that the MSDS sheets be provided
to the employer, it imposes the duty of warning and training employees on the employer. 
Because the Pizzis did not challenge the adequacy of the warning in the trial court, that
issue is not presented for review. Tex. R. Civ. P. 166a(c). Accordingly, sub-issues A and
C are overruled as to Du Pont and Degussa.


Van Waters


 By sub-issue A, the Pizzis contend the Hospital's use of industrial strength
hydrogen peroxide was foreseeable and not a misuse, and that in any event, Van Waters
had a duty to warn of risks associated with misuse. By sub-issue C, they contend that the
learned intermediary defense does not absolve Van Waters. In the trial court and on
appeal, Van Waters asserted that the Pizzis' negligence and strict liability claims should
be denied because (1) using industrial strength hydrogen peroxide as a drain cleaner is not
an intended or reasonably foreseeable use of the product, and (2) the Hospital was a
sophisticated commercial purchaser of industrial strength hydrogen peroxide. Van Waters
contends it did not have a duty to further warn because the Hospital was a sophisticated
purchaser. Munoz v. Gulf Oil Co., 732 S.W.2d 62, 65 (Tex.App.--Houston [14th Dist.] 1987,
writ ref'd n.r.e.). By their response in the trial court, the Pizzis contended that the Hospital
was not a sophisticated user; however, on appeal that issue is not presented. See Tex.
R. App. P. 38.1(e); Ajibade v. Edinburg General Hosp., 22 S.W.3d 37, 40 (Tex.App.---Corpus Christi 2000, no pet.); Rayl v. Borger Economic Development Corp, 963 S.W.2d
109, 114 (Tex.App.--Amarillo 1998, no pet.). Thus, our review is limited to consideration
of whether the Hospital's use of the chemical was foreseeable and not misuse and whether
warnings were given.

 Regarding warnings, Van Waters passed along the MSDS sheets and provided
them to the Hospital. Also, in connection with his study, McDonald had tests run by an
outside laboratory and the results were furnished to the Hospital. McDonald notified the
Hospital by letter that he did not recommend that the chemical be used in lavatory drains. 
Notwithstanding these warnings and the Hospital's own experience with the chemical that
when placed in the kitchen sink drain, it effervesced and bubbled, the Hospital used the
chemical in the ICU lavatory as a drain cleaner. We conclude that warnings were given,
but because the adequacy of the warnings is not presented for review, sub-issues A and
C are overruled as to Van Waters. 

Warranty of Fitness for Particular Purpose


Degussa and Van Waters


 By their no-evidence motions for summary judgment, Degussa and Van Waters both
contended that there was no evidence that (1) they knew of the chemicals intended use
as a drain cleaner, or (2) the Hospital relied on Degussa or Van Waters to select a drain
cleaner. By sub-issue B, the Pizzis contended that Degussa and Van Waters breached
their implied warranty of fitness for a particular purpose in failing to provide a product
suitable for sewage drain line treatment. We disagree. 

 Citing section 2.315 of the Texas Business and Commerce Code Annotated
(Vernon 1994), the Pizzis contended that Degussa and Van Waters knew or should have
known of the Hospital's particular purpose of pouring hydrogen peroxide into the sewer
system for pretreatment of waste water in the building before it entered the municipal
sewer system. Because the Pizzis' pleadings, response, and appellate brief demonstrate
that the particular use made the basis of the underlying suit was the use of hydrogen
peroxide in a sink drain in an ICU room, we will review the issue as involving that particular
use. Section 2.315 provides:

 § 2.315 Implied Warranty: Fitness for Particular Purpose

 Where the seller at the time of contracting has reason to know any particular
purpose for which the goods are required and that the buyer is relying on the
seller's skill or judgment to select or furnish suitable goods, there is unless
excluded or modified under the next section an implied warranty that the
goods shall be fit for such purpose.


Although the no-evidence motions for summary judgment expressly challenged the
element of reliance on no-evidence grounds, the Pizzis' response to the motion does not
address reliance. Because the issue of reliance by the Hospital on the skill or judgment
of Degussa or Van Waters to furnish a suitable drain cleaner was not presented to the trial
court in writing, the issue cannot be considered on appeal. Tex. R. Civ. P. 166a(c); Casso,
776 S.W.2d at 553.

 Moreover, as mentioned above, by his written report dated April 30, 1991, McDonald
submitted a study for the treatment of Hospital waste water. The report suggested a
method by which ozone would be added directly to the waste stream by an on-site
generator or another method by which a 50% hydrogen peroxide solution would be added
to the sewage in the sump which was located in the basement of the Hospital. Among
other matters, the Pizzis submitted the deposition of McDonald as summary judgment
evidence. By their brief, the Pizzis submit that McDonald's study indicated that the
chemical would also be used in lavatories; however, there is no summary judgment
evidence demonstrating the study provided to the Hospital was also provided to Van
Waters or Degussa. Also, the Pizzis contend that by facsimile, a Hospital employee
inquired about using the chemical in lavatories. However, as previously noted, by
argument elsewhere in their brief, the Pizzis do not contend that they used hydrogen
peroxide with a concentration of 50% in the sump and 35% in the sinks in the hospital
room in reliance on Degussa and Van Waters. To the contrary, they assert that the
Hospital took such action based upon McDonald's recommendation. Additionally,
McDonald had certain tests conducted by an outside laboratory and the results were
furnished to the Hospital. Accordingly, applying the appropriate standard of review, we
conclude that the Pizzis' summary judgment evidence does not raise a genuine issue of
material fact as to their reliance on Van Waters or Degussa to select a drain cleaner. Sub-issue B is overruled. Our disposition of the foregoing sub-issues pretermits our
consideration of sub-issue E. 

 Accordingly, the judgment of the trial court is affirmed.


 Don H. Reavis

 Justice



Publish.



1. Although Tex. R. Civ. P. 166a does not prohibit the presentation of a combination
traditional and no-evidence motion, the better practice is to file two separate motions.
Grant v. Southwestern Elec. Power Co., 20 S.W.3d 764, 768 (Tex.App.-Texarkana 2000,
pet. granted); Kelly v. LIN Television of Texas, L.P., 27 S.W.3d 564, 569 (Tex.App.--Eastland 2000, pet. denied). 
2. Tex. Bus. & Com. Code Ann. §§ 17.46-17.826 (Vernon 1987 & Pamph. Supp.
2002).
3. The Pizzis' action against McDonald has been severed and the consultant is not
a party to this appeal.
4. Occupational Safety and Health Standards, 29 C.F.R. § 1910.1200 (2000).
5. No special exceptions were lodged against the global pleading. A motion for
summary judgment cannot be used as a substitute for a special exception. Massey v.
Armco Steel Co., 652 S.W.2d 932, 934 (Tex. 1983).
6. Among other allegations, the paragraph alleges that "[t]he waste water treatment
program then put in place was inadequately designed and/or marketed and not fit for the
purposes intended," but it does not identify the party charged with the design and
marketing responsibility. Because the briefs and summary judgment evidence demonstrate
that McDonald designed and/or marketed the waste water treatment system and he was
also named as a party but has been severed from this cause, questions of the design and
marketing of the waste water treatment are not presented for consideration. 
7. The Pizzis do not contend that Du Pont breached any warranty of fitness for a
particular purpose.
8. Tex. Bus. & Com. Code Ann. § 17.45(4) (Vernon Pamph Supp. 2002).
9. Although the issue presented in the trial court is not identical to the issue presented
on appeal, we conclude that it substantially complies with the rule that all issues in
opposition to a motion for summary judgment must be presented in writing to the trial court. 
Casso, 776 S.W.2d at 553.
10. Degussa adopted Du Pont's motion.