NO. 07-02-0458-CV



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL A



JULY 23, 2003


 

______________________________




WILLIAM HAWTHORNE, APPELLANT



V.



STAR ENTERPRISE, INC., APPELLEE




_________________________________



FROM THE 60TH DISTRICT COURT OF JEFFERSON COUNTY;



NO. B-160,501; HONORABLE GARY SANDERSON, JUDGE



_______________________________



MEMORANDUM OPINION




Before JOHNSON, C.J., and REAVIS and CAMPBELL, JJ.



 Presenting five issues, William Hawthorne requests we reverse and remand for trial
the summary judgment rendered upon consideration of Star Enterprise, Inc.'s second
motion for summary judgment, (1) that he take and recover nothing by his action seeking
damages against Star for his wrongful discharge because he refused to perform an illegal
act. By his issues, Hawthorne contends (1) Simmons Airlines v. Lagrotte (2) is not applicable;
(2) Star did not establish as a matter of law without factual issues that Hawthorne was a
just cause employee; (3) Star did not establish as a matter of law without factual issues
that the collective bargaining agreement provided contractual safeguards for being
wrongfully terminated; (4) the Labor Management Relations Act does not preempt his
Sabine Pilot (3) cause of action; and (5) the trial court erred by granting summary judgment
on issues that should have been presented by special exception. Based upon the rationale
expressed herein, we affirm. 

 Hawthorne was employed by Star at its refinery in Port Arthur and served as an
assistant operator and head operator in the sulfur complex of the refinery. Contending he
was an at-will employee, asserting only one cause of action based on Sabine Pilot,
Hawthorne alleged (1) he and his crew were ordered by Star to commit an allegedly illegal
act of smelling water samples (4) for the purpose of determining the presence of ammonia;
(2) he refused to smell the water samples and would not allow his crew to do so; and (3)
as a result of his refusal, his employment was terminated. To establish his claim for
wrongful termination under Sabine Pilot, Hawthorne had the burden to establish: 


 he refused to perform an illegal act; and
 his refusal was the only reason he was terminated.


 

See Sabine Pilot, 687 S.W.2d at 735; Hawthorne v. Star, 45 S.W.3d 757, 761
(Tex.App.-Texarkana 2001, pet. denied). By its amended answer, in addition to a general
denial, which was effective to put Hawthorne on proof of every fact essential to his case,
see Shell Chemical Company v. Lamb, 493 S.W.2d 742, 744 (Tex. 1973), Star alternatively
alleged that Hawthorne's claims were (1) preempted by the Labor Management Relations
Act, (5) (2) barred in whole or in part by the six-month DelCostello (6) limitations period, and (3)
barred by his failure to exhaust grievance and arbitration provisions under the applicable
collective bargaining agreement.

 The summary judgment based on Star's first traditional motion was reversed and
remanded on first appeal. See Hawthorne, 45 S.W.3d at 757. The clerk's record
presented here does not include Star's first motion for summary judgment; however,
according to the Texarkana Court's opinion, the ground for Star's first motion asserted
Hawthorne's Sabine Pilot claim failed as a matter of law because there was some
summary judgment evidence negating the sole cause requirement of a Sabine Pilot claim. 
45 S.W.3d at 759. Noting that neither party made an issue of the legality or illegality of
smelling the water, the court concluded the first element of a Sabine Pilot claim was met
for purposes of the appeal. Then, by footnote, the court noted it did not address whether
there was some evidence that Hawthorne was terminated for refusing to do an illegal act
because a no-evidence motion was not presented. Id. at 762 n.3. 

 Star's second motion was a combination traditional and no-evidence motion for
summary judgment. By its first traditional ground, Star contended the Sabine Pilot
exception to the employment-at-will doctrine was inapplicable because Hawthorne's
employment was covered by the collective bargaining agreement. As its second traditional
ground, Star contended Hawthorne's claims were preempted by section 301 of the Labor
Management Relations Act and barred by his failure to exhaust grievance and arbitration
provisions. Then, by its no-evidence motion, Star contended "there is no evidence
supporting applicability of a criminal statute that [Hawthorne] was discharged for refusing
to violate." (7) Because the grounds of the second motion were not presented in the first
motion, the law as stated in the first appeal reversing summary judgment does not control
our disposition of this appeal. See Glenn v. Prestegord, 456 S.W.2d 901, 902 (Tex. 1970);
see also Allstate Insurance Company v. Smith, 471 S.W.2d 620, 622 (Tex.Civ.App.--El
Paso 1971, no writ). We commence our review by considering Hawthorne's fifth issue. 

No-Evidence Summary Judgment Standard of Review


Rule 166a(i)



 Rule 166a(i) entitled "No-Evidence Motion," provides that a party may move for
summary judgment on the ground that there is no evidence of one or more essential
elements of a claim or defense on which an adverse party would have the burden of proof
at trial. Where, as here, the summary judgment does not specify or state the grounds relied
on, it will be affirmed on appeal if any of the grounds presented in the motion are
meritorious. Carr v. Brasher, 776 S.W.2d 567, 569 (Tex. 1989); Insurance Co. Of N. Am.
v. Security Ins., 790 S.W.2d 407, 410 (Tex.App.-Houston [1st Dist.] 1990, no writ). Where
a motion is presented under Rule 166a(i) asserting there is no evidence of one or more
essential elements of the non-movant's claims upon which the non-movant would have the
burden of proof at trial, the movant does not bear the burden of establishing each element
of its own claim or defense as under subparagraph (a) or (b). Rather, although the non-moving party is not required to marshal its proof, it must present evidence that raises a
genuine fact issue on the challenged elements. See Tex. R. Civ. P. 166a, Notes and
Comments.

 Because a no-evidence summary judgment is essentially a pretrial directed verdict,
we apply the same legal sufficiency standard in reviewing a no-evidence summary
judgment as we apply in reviewing a directed verdict. Roth v. FFP Operating Partners, 994
S.W.2d 190, 195 (Tex.App.--Amarillo 1999, pet. denied); Jackson v. Fiesta Mart, Inc., 979
S.W.2d 68, 70 (Tex.App.--Austin 1998, no pet.). Thus, our task as an appellate court is
to ascertain whether the non-movant produced any evidence of probative force to raise a
fact issue on the material questions presented. Id. We consider all the evidence in the
light most favorable to the party against whom the no-evidence summary judgment was
rendered, disregarding all contrary evidence and inferences. Merrill Dow Pharmaceuticals
v. Havner, 953 S.W.2d 706, 711 (Tex. 1997), cert. denied, 523 U.S. 1119, 118 S.Ct. 1799,
140 L.Ed.2d 939 (1998). A no-evidence summary judgment is improperly granted if the
non-movant presents more than a scintilla of probative evidence to raise a genuine issue
of material fact. Fiesta Mart, Inc., 979 S.W.2d at 70-71. More than a scintilla of evidence
exists when the evidence "rises to a level that would enable reasonable and fair-minded
people to differ in their conclusions." Havner, 953 S.W.2d at 711.

 By his fifth issue directed to Star's no-evidence ground, Hawthorne contends the
trial court erred in granting summary judgment on issues that he contends should have
been presented by special exception. We disagree. Because this issue implicates the text
and substance of Star's no-evidence motion, and to demonstrate our analysis, we set out
the complete text of that portion of the motion.

 C. Plaintiff Presents No Evidence of Applicability of Criminal Statute.

 Before a Sabine Pilot case may go to the jury, the trial judge must
"determine if a statute with a criminal penalty is involved." Sabine Pilot
Service, Inc. v. Hauck, 687 S.W.2d 733, 736 (Tex. 1985) (Kilgarlin,
concurring). Despite adequate time for discovery, there is no evidence
supporting applicability of a criminal statute that plaintiff was discharged for
refusing to violate. For this additional reason, plaintiff has no case and
summary judgment should be granted in defendant's favor.


(Emphasis added). This ground comports with Hawthorne's response and objection in the
trial court. Hawthorne is correct in his contention that a summary judgment should not be
used to test pleadings. See Alashmawi v. IBP, Inc., 65 S.W.3d 162, 174 (Tex.App--Amarillo
2001, pet. denied), citing Massey v. Armco Steel Co., 652 S.W.2d 932, 934 (Tex. 1983). 
However, Star's motion was not an attack on Hawthorne's pleadings. Under Sabine Pilot,
the narrow exception to the at-will doctrine exists only where the employee is discharged
because "the employee refused to perform an illegal act." Because Hawthorne did not
contend in the trial court and does not argue here that the motion did not comply with Rule
166a(i) of the Texas Rules of Civil Procedure, or that it failed to give him fair notice, see
Roth v. FFP Operating Partners, 994 S.W.2d 190,194 (Tex.App.--Amarillo 1999, pet.
denied), we conclude Star's motion was sufficient to impose the burden on Hawthorne to
respond with summary judgment evidence showing the existence of any fact questions
which, if found, would constitute proof of the elements of any offense.

 Hawthorne did not present any summary judgment evidence addressing the no-evidence motion or presenting a fact question that smelling the water samples would
constitute proof of the elements of any offense. Moreover, even if Hawthorne's claim that
smelling the water samples taken after the water had been processed by the "stripping
unit" implicated an illegal act, a question we do not decide, he did not produce any 
summary judgment evidence creating a fact issue that the samples contained hazardous
materials, if smelled. Further, although the Material Safety Data Sheet suggests that
inhaling H2S, (8) commonly known as "rotten egg" gas, can cause "headache, dizziness,
nausea, vomiting, and diarrhea" if the concentration of H2S is at a certain level, Hawthorne
did not present any summary judgment evidence creating a fact question that the
concentration of H2S was sufficient to cause any of the conditions mentioned. Hawthorne's
fifth issue is overruled. 

 Because the judgment does not specify or state the ground upon which it is based,
and should be affirmed on appeal if any of the grounds presented are meritorious, see
Carr, 776 S.W.2d at 569 and Insurance Co. of N. Am., 790 S.W.2d at 410, our disposition
of Hawthorne's fifth issue addressing the no-evidence ground renders our consideration
of his remaining issues unnecessary.

 Accordingly, the judgment of the trial court is affirmed.


 Don H. Reavis

 Justice

 



1. The judgment does not specify or state the ground upon which it was based.
2. 50 S.W.3d 748 (Tex.App.--Dallas 2001, pet. denied).
3. Sabine Pilot Service, Inc. v. Hauck, 687 S.W.2d 733, 735 (Tex. 1985).
4. The water samples were taken after the water had been processed through a unit
designed to remove hazardous substances such as ammonia, hydrogen sulfide, phenol,
and water metallic sulfides. 
5. 29 U.S. § 185(a).
6. DelCostello v. International Bhd. of Teamsters, 462 U.S. 151, 170-71, 103 S.Ct.
2282, 76 L.Ed.2d 476 (1983).
7. By issues one, two, three, and four, Hawthorne addresses Star's two traditional
summary judgment grounds and by issue five, he addresses Star's no-evidence ground.
8. Hydrogen sulfide.


 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 









NO.
07-08-0476-CR

 

IN THE COURT OF APPEALS

 

FOR THE SEVENTH DISTRICT OF TEXAS

 

AT AMARILLO

 

PANEL D

 



MAY 27, 2010

 



 

PHILLIP DOYLE CHANEY,  

                                                                                         Appellant

v.

 

THE STATE OF TEXAS,  

                                                                                         Appellee

_____________________________

 

FROM
THE 50TH DISTRICT COURT OF COTTLE COUNTY;

 

NO.
2834; HONORABLE WILLIAM H. HEATLY, PRESIDING

 



 

Dissenting Opinion

 



 

Before QUINN, C.J., and CAMPBELL and PIRTLE, JJ.

            I respectfully dissent from the
conclusion that the evidence of guilt was legally sufficient.   My conclusion is founded upon the test we
have historically utilized in addressing such issues.  The test mandates that we defer to the jurys
decision unless it is irrational or not supported by some evidence.  Ortegon v. State,
267 S.W.3d 537, 546 (Tex. App.Amarillo 2008, pet. refd).  That test is not a mandate of our own
creation but rather that of our Court of Criminal Appeals espoused years ago, e.g., Moreno v. State, 755 S.W.2d 866,
867 (Tex. Crim. App. 1988) (requiring intermediate appellate courts to deem
legitimate a jurys verdict unless it was irrational or lacked evidentiary support),
and, as such, must be followed.  

            So stated, the standard of review by
which we must abide likens to the words oft used in describing the standard of
review utilized in assessing whether a decision evinced an abuse of discretion.  According to the latter, the decision must
comport with the law and have evidentiary basis, Rachal v. State, 917 S.W.2d 799, 808 (Tex. Crim. App. 1996), or fall within
the zone of reasonable disagreement.  Winegarner v. State, 235 S.W.3d
787, 790 (Tex. Crim. App. 2007).  Both
gauge the actors (the factfinders or judges) conduct against the rules of law and the circumstances
(or evidence) before him.  And, given
that, both have two components, that is, the rationality or reasonableness of
the decision and the presence of evidence to support it.  

            It is the first component that I now
discuss in conjunction with the appeal before me.  At the very least, to be rational a decision
must be one made by a body opting to comport its determination to the law.  Again, harkening back to the idea of abused
discretion, a ruling that deviates from the law or misconstrues the law is not
a legitimate exercise of discretion.  Rachal, 917 S.W.2d at 808.  Likewise,
a verdict founded upon inaccurate legal theorems cannot comport with the law
and thereby be rational.  And, therein
lays the seed of my discontent.

            The only evidence purporting to
illustrate that the appellant intentionally or knowingly intended the death of
the victim came from Texas Ranger Jay Foster. 
As indicated in the majority opinion, he all but conceded that he
actually found nothing indicating that appellant intentionally killed anyone.  Nonetheless, that did not stop him from
arriving at the conclusion he desired by interjecting evidence regarding appellants
employment and hypothesizing therefrom. 
As a prison guard, according to the ranger, appellant should be held to
a higher standard of conduct due to his familiarity with firearms.  And, the ranger continued, holding him to
that higher standard required one to conclude that appellant knowingly caused the death of Lukas Taylor as he tried to take the gun
away from him.  There are two fatal flaws
in considering such comments and inferences therefrom as probative evidence
when assessing the legal sufficiency of the evidence, however.  

First, if those suppositions were to comport
with the law, they would be nothing other than conclusions of law; that is,
statements of what the law is.  Ford v. State, 108 Tex. Crim. 626, 2 S.W.2d
265, 266 (1927) (defining a conclusion of law). 
 And, as we know, statements
tantamount to conclusions of law are not probative evidence under our
jurisprudence.  Urschel v. Garcia, 164 S.W.2d
804, 806 (Tex. Civ. App.San Antonio 1942, writ refd w.o.m.) (stating
that a conclusion of law is not any evidence supporting a verdict); Watson v. Tamez,
136 S.W.2d 645, 646 (Tex. Civ. App.San
Antonio 1940, no writ) (stating that a conclusion of law has no probative force
and cannot be considered evidence even if no objection is made to it).  Second, the rangers opinion is not even a
correct statement of the law.  The State cites
us to no authority holding that because one may be employed as a prison guard
or peace officer, he is bound by a higher standard of conduct when handling firearms.  Nor did I find any such authority.  And, while it may be arguable that ones
familiarity with such weapons may mean that he or she has a greater awareness
of the harm they can inflict, that does not logically entitle one to conclude
that any particular outcome linked to the handling of such weapons by those
people was intended.   I remind the
reader that to be guilty of intentionally causing the death of another, the
actor must have had the conscious objective or desire to cause the result, i.e. the death of the victim.  Tex. Penal Code Ann. §6.03(a)
(Vernon 2003).  
Being aware of the potential for harm does not equate to proof that appellant
had the conscious objective or desire to kill. 


Nor does the evidence of record illustrate
a knowing murder for purposes of the Texas Penal Code.  For the death to fall within that category, the
actor must be aware that his conduct is reasonably certain to cause death.  Id. §6.03(b).  While
appellant may have known, due to his training, that struggling with another for
a gun could result in someones
death, that is not evidence that his conduct would, with reasonable certainty, cause
death.  Indeed, if knowing that ones
handling or mishandling of a firearm could result in a death were enough to
satisfy the mens rea for
murder, then every experienced hunter holding a rifle or handgun would have the
requisite mens rea for the
crime.   This is so because he or she
undoubtedly knows that manipulating such a weapon could cause death should it
discharge for whatever reason, and that is not a posture in which I care to put
the millions of hunters in this state or anyone else that may care to exercise
rights allowed under the Second Amendment to the United States Constitution.  Rather, the evidence here had to illustrate
that appellant was reasonably certain that his attempt to retrieve the handgun
would result in death, and a Texas Rangers opinion founded on a mistaken legal
premise is not such evidence. 

That the ranger purportedly
discredited appellants version of how or why the handgun discharged fails to
fill the mens rea void as
well.   To believe otherwise would be to
equate a negative (i.e. discrediting
a defendants version of what happened) to a positive (i.e. proof that the contrary occurred or that appellant pulled the
trigger).  To my limited understanding of
math, science and logic, that is not possible. 
Furthermore, it may well be that appellant had his finger on the trigger
when the gun fired but the record leaves me to guess at whether he, at that
time, desired the death of his friend or even was reasonably certain that death
would result.  Whether the trigger was
pulled via appellants own muscle contractions which manipulated his fingers
movement or by the victim somehow pulling the weapon or striking appellants
finger is also left to conjecture.      

As for the testimony coming from those
who simply concluded that appellant caused the victims death or caused the
shooting, neither statement addresses the concept of mens rea; rather it simply involves nexus or
causation at best.  Such comments are nothing
more than saying that appellant erected the dominoes.  One cannot logically deduce from the act of
erecting them that he either knocked them over,
intended that they be knocked over, or was reasonably certain that they would
be knocked over.  

            Thus, what we have here is a situation
wherein the jury must have adopted misstatements
of the law, accepted legal conclusions as evidence, or made logically insupportable inferences to
ultimately arrive at the finding that appellant committed murder.  Because a jury does not act reasonably when doing
so, its finding is irrational. 

            As for the second prong of the
standard of review, I too believe that it has application here.  Again, the only way that the jury could have
found appellant guilty of intentional murder is by accepting as evidence the rangers
utterance regarding the application of higher standards of conduct to
appellant.  Yet, since those comments are
nothing short of conclusions of law (and legally inaccurate conclusions at that),
they had no probative evidentiary force. 
This, in turn, means that they are not evidence upon which the verdict
could be based.  

            In sum, I would sustain appellants
legal sufficiency point, reverse the judgment and render judgment acquitting
appellant of murder.

 

                                                                                    Brian
Quinn

                                                                                    Chief
Justice

 

Publish.