**Robert ROE, M.D., Appellant,**

v.

**WALLS REGIONAL HOSPITAL, INC., Appellee.**

No. 10–98–345–CV.

Court of Appeals of Texas, Waco.

June 7, 2000.

Jim Claunch, Claunch Law Firm, Ft. Worth, for appellant.

Gregory P. Blaies, Blaies & Hightower, Ft. Worth, for appellee.

Before Chief Justice DAVIS, Justice VANCE, and Justice GRAY.

## O P I N I O N

REX D. DAVIS, Chief Justice.

Appellant Dr. Robert Roe appeals from the trial court's granting of summary judgment in favor of the Appellee, Walls Regional Hospital ("the hospital"). Roe claims that the trial court erred when it: (1) granted summary judgment in favor of the hospital; and (2) sustained the hospital's objections to the evidence he offered in support of his response to the hospital's motion for summary judgment.

We affirm the judgment of the trial court.

## FACTUAL AND PROCEDURAL BACKGROUND

Roe was a doctor with staff privileges at the hospital and in the spring of 1994, his privileges were reevaluated pursuant to the hospital's bylaws. The bylaws provide that applications for reappointment to the medical staff must be reviewed by the Quality Improvement–Credentials Committee and the Medical Executive Committee before they are submitted for final approval by the Board of Trustees. The Board is the ultimate arbiter of all reappointment decisions, and is free to deny applications for reappointment despite a favorable recommendation by the Quality Improvement–Credentials committee and the Medical Executive Committee. If the Board does so, the Medical Executive Committee must send written notification of the unfavorable recommendation to the physician-applicant. For a more detailed rendition of the process that the hospital employs when reevaluating a physician's staff privileges, please see our opinion in *Walls Regional Hospital v. Altaras,* 903 S.W.2d 36, 38–39 (Tex.App.—Waco 1994, orig. proceeding).

On May 31, 1994, Roe received written notice that the Board of Trustees was not going to renew his privileges. Roe appealed the decision through the administrative appeals procedure set out in the bylaws, known as the "Fair Hearing" process.

Before the Fair Hearing proceedings commenced, Roe confronted several nurses who were listed as possible witnesses. On July 15, 1994, the hospital suspended Roe's staff privileges without a hearing, pending the outcome of the Fair Hearing. On July 29, the hospital lifted Roe's suspension after he agreed not to confront any more possible Fair Hearing witnesses.[1]

In August of 1994, Roe filed a petition in the Johnson County Court at Law in which he alleged, *inter alia,* that he was being denied due process of law and that the Board of Trustees violated the hospital bylaws. *Id.* at 39. Roe subsequently filed a motion alleging that Kenneth Kramer, the hospital's attorney, met with the hospital's Board of Trustees to discuss the Fair Hearing and whether Roe should be reappointed. *Id.* at 40. Roe claimed that the Board of Trustees was "tainted" by this improper contact and it could no longer be a fair arbiter of his pending reappointment. *Id.* Roe also filed several other

---

1. On July 18, Roe obtained a temporary restraining order so that he could attend to his patients and practice medicine in the hospital. According to the hospital's brief, Roe's suspension prevented him from practicing medicine at the hospital for a total of two days. *See* Tex.R.App. P. 38.1(f).

motions involving his pending reevaluation. *Id.* The court "continued" Roe's Fair Hearing until it could hold a pretrial hearing on Roe's motions. *Id.* The hospital then sought a writ of mandamus from this Court directing Judge Altaras to vacate his order and to refrain from interfering with the hospital's professional review process prior to Roe's exhaustion of remedies under its bylaws. We conditionally granted the writ. *Id.* at 44.

The Fair Hearing was held before an administrative hearing officer and on May 8, 1995, the hearing officer recommended that the hospital reinstate Roe's staff privileges, which the hospital honored.

On January 25, 1996, Roe filed suit against the hospital alleging negligence, gross negligence, and defamation arising from the alleged statements of Steven D. Porter, Hospital Administrator; Dr. Todd Linstrum, Chief of Medical Staff; Sheila White, Assistant Administrator; and Kenneth Kramer, Senior Attorney for the Harris Methodist Health System. Roe alleged that Porter, Linstrum, White, and Kramer met with the Board of Trustees concerning his re-appointment and told the Board that they were in possession of information that would make his reappointment undesirable. Roe claimed that Porter's, White's, and Kramer's representations were false and misleading, malicious, made with reckless disregard for the truth, and injurious to his reputation. Roe alleged that as a result of the representations, the Board of Trustees did not reappoint him to the hospital's medical staff. Roe also alleged that White kept a "secret file," in which she maintained accounts of his alleged improper conduct. Roe claimed that White, along with Porter, Linstrum, and Kramer, published this information to the Board of Trustees at the aforementioned meeting

concerning his re-appointment status. Additionally, Roe contended that Porter, Linstrum, White, and Kramer were malicious, negligent, and grossly negligent in the performance of their duties at the hospital and that these acts caused harm to his professional reputation and his ability to make a living.

With respect to Roe's defamation claims, the hospital moved for summary judgment on grounds that such claims were barred by the statute of limitations and that no defamatory matters were published to any third parties. With respect to Roe's claims of negligence and gross negligence, the hospital moved for summary judgment on grounds that 1) Texas law recognizes no cause of action against a hospital for actions taken or decisions made in terminating or suspending a physician's staff privileges, regardless of the reason for the termination or suspension, and 2) if such a cause of action exists, it is barred as a matter of law by the qualified immunity provisions of the Texas Medical Practice Act (the TMPA)[2], section 161.033 of the Texas Health and Safety Code[3], and the Health Care Quality Improvement Act of 1986 (the HCQIA)[4].

Roe's response argued that Texas has historically recognized a cause of action against a private hospital for its actions taken in the peer review and credentialing process. Roe asserted that the statutes relied on by the hospital in its motion cloak the medical peer review process with a qualified immunity that is destroyed when the hospital acts with actual malice. Roe argued that his summary judgment evidence raised a genuine issue of material fact regarding whether the hospital acted with malice when it refused to renew his staff privileges. Roe attached five exhibits

---

**2.** Act of June 1, 1987, 70th Leg., R.S., ch. 596, § 18, 1987 Tex. Gen. Laws 2333 (repealed by Act of May 13, 1999, 76th Leg., R.S., Ch. 388, § 6(a), 1999 Tex. Gen. Laws 1431, 2439–40, eff. Sept. 1, 1999) (now codified without substantive change at TEX OCC.CODE ANN. § 151.001 et seq. (Vernon 2000) (hereinafter

cited as TEX.REV.CIV. STAT. ANN. Art. 4495b § 5.06(*l*), (m) (Vernon Supp.1999)).

**3.** TEX. HEALTH & SAFETY CODE ANN. §§ 161.031–.033 (Vernon 1992).

**4.** 42 U.S.C.A. §§ 11101–11152 (West 1995).

to his response to the hospital's motion, and the hospital objected to each exhibit. The trial court sustained the hospital's objections as to all five of Roe's exhibits and granted its motion for summary judgment. Roe claims on appeal that the trial court erred in sustaining the hospital's objections to his summary judgment evidence and in granting summary judgment in favor of the hospital.

## STANDARD OF REVIEW

The summary judgment movant bears the burden to prove that no genuine issue of material fact exists and that the movant is entitled to summary judgment as a matter of law. TEX.R. CIV. P. 166a(c); *Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548 (Tex.1985); *Delta Air Lines, Inc. v. Norris,* 949 S.W.2d 422, 425 (Tex.App.—Waco 1997, writ denied). A movant who is the defendant must conclusively negate at least one of the elements of the non-movant's cause of action or conclusively establish every element of an affirmative defense. *U.S. Fire Ins. Co. v. Williams,* 955 S.W.2d 267, 268 (Tex.1997). If the motion does so, the non-movant must then come forward with competent summary judgment evidence sufficient to raise a genuine fact issue on each element of the cause of action or a single element of the affirmative defense. *KPMG Peat Marwick v. Harrison County Housing Finance Corp.,* 988 S.W.2d 746, 748 (Tex. 1999); *Brownlee v. Brownlee,* 665 S.W.2d 111, 112 (Tex.1984); *City of Houston v. Clear Creek Basin Authority,* 589 S.W.2d 671, 678–79 (Tex.1979).

When determining whether a material fact issue exists, we must accept as true all evidence favorable to the non-movant. *Nixon,* 690 S.W.2d at 548–49; *Delta Air Lines, Inc.,* 949 S.W.2d at 425. We must also resolve all doubts and indulge every reasonable inference in favor of the non-movant. *Nixon,* 690 S.W.2d at 549; *Delta Air Lines, Inc.,* 949 S.W.2d at 425. When the trial court does not specify the grounds for its granting of a motion for summary judgment, as is the case here, we must affirm the judgment if any of the grounds advanced within the motion are meritorious. *State Farm Fire & Cas. Co. v. S.S.,* 858 S.W.2d 374, 380 (Tex.1993).

## DEFAMATION CLAIMS

■ The hospital moved for summary judgment on the ground that Roe's defamation causes of action were barred by the statute of limitations. The hospital claims that because its decision not to renew Roe's staff privileges was communicated to him on May 31, 1994, any alleged defamatory statements that form the basis of Roe's complaint were made on or before that date. The hospital also claims that Roe had acknowledged that these alleged defamatory statements form the basis of his defamation complaint and that he was aware that the Board of Trustees made their decision not to renew his staff privileges based upon these alleged defamatory statements. Therefore, Roe's defamation causes of action accrued on May 31, 1994, the date Roe became aware of the alleged defamatory statements, and limitations ran on these alleged claims on June 1, 1995.

■ In order for a private individual to maintain a defamation cause of action, he must prove that the defendant published a defamatory statement concerning him while acting with negligence. *WFAA–TV v. McLemore,* 978 S.W.2d 568, 571 (Tex. 1998). A suit for defamation must be brought no later than one year after the day the cause of action accrues. TEX. CIV. PRAC. & REM.CODE ANN. § 16.002(a) (Vernon 1999). A defamation cause of action accrues when the defamatory matter is published or circulated. *Childs v. Haussecker,* 974 S.W.2d 31, 36–37 (Tex.1998) (cause of action generally accrues when a wrongful act causes an injury, regardless when the plaintiff learns of the injury or if all the resulting damages have yet to occur); *Ross v. Arkwright Mut. Ins. Co.,* 892 S.W.2d 119, 131 (Tex.App.—Houston [14th Dist.] 1994, no writ).

The defendant moving for summary judgment on the affirmative defense of limitations has the burden to establish that limitations ran on the plaintiff's claim. *Velsicol Chem. Corp. v. Winograd,* 956 S.W.2d 529, 530 (Tex.1997). If the plaintiff pleads facts giving rise to the application of the discovery rule, the defendant has the burden to negate its application and prove that there is no genuine issue of material fact concerning the time the plaintiff discovered, or using reasonable diligence should have discovered, the nature of his injury. *Id.; Gillespie v. Fields,* 958 S.W.2d 228, 231 (Tex.App.—Tyler 1997, pet. denied). The alleged defamatory statements were made on or before May 31, 1994, the date Roe admittedly became aware of their existence. Even if Roe had pleaded facts giving rise to the application of the discovery rule, his alleged defamatory causes of action began to accrue no later than that date, and limitations expired June 1, 1995. Because Roe filed suit against the hospital on January 25, 1996, over one year and eight months after his alleged cause of action accrued, summary judgment on this claim was proper.

## NEGLIGENCE/GROSS NEGLIGENCE

Roe asserts on appeal that the trial court erred in granting summary judgment for the defendant on Roe's negligence claims because Texas law recognizes a cause of action against a private hospital for wrongfully terminating or suspending a physician's staff privileges. Roe also claims that he provided summary judgment evidence which raises a genuine fact issue regarding whether the hospital acted with the actual malice necessary to pierce the peer review immunity conferred by the TMPA, the HCQIA, and the Health and Safety Code. Roe additionally argues that the hospital violated his right to due process when it denied his reappointment.[5]

In order to encourage effective identification and discipline of dangerously incompetent physicians without the fear of retaliatory claims filed by the disciplined physicians, the United States Congress in 1986 enacted the HCQIA. 42 U.S.C.A § 11101 (West 1995). The HCQIA attempts to facilitate effective peer review by attaching a discovery privilege to information provided in good faith to a peer review committee, and by granting immunity from liability arising from actions taken in the peer review process. *See St. Luke's Episcopal Hosp. v. Agbor,* 952 S.W.2d 503, 514 (Tex.1997) (Cornyn, J., dissenting) (citing Richard L. Griffith & Jordan M. Parker, *With Malice Toward None: The Metamorphosis of Statutory and Common Law Protections for Physicians and Hospitals in Negligent Credentialing Litigation,* 22 Tex. Tech L. Rev. 156, 181–82 (1986)). The immunity granted by the HCQIA extends only to professional review actions taken:

1) in the reasonable belief that the action was in the furtherance of quality health care,

2) after a reasonable effort to obtain the facts of the matter,

3) after adequate notice and hearing procedures are afforded to the physician involved or after such other procedures as are fair to the physician under the circumstances, and,

4) in the reasonable belief that the action was warranted by the facts known after such reasonable effort to obtain facts and after meeting the requirement of paragraph (3).

42 U.S.C.A § 11112 (West 1995). In addition to the immunities granted by the act itself, the HCQIA allows individual states to provide even further protection to medical peer review activities. Specifically, the HCQIA provides:

Except as specifically provided in this subchapter, nothing in this subchapter

5. Because Roe did not allege that the hospital violated his right to due process in his most recent amended original petition on file in this cause, he cannot advance this argument for the first time on appeal. Tex.R.App. P. 33.1(a).

shall be construed as changing the liabilities or immunities under law or as preempting or overriding any State law which provides incentives, immunities, or protection for those engaged in a professional review action that is in addition to or greater than that provided by this subchapter.

*Id.* § 11115(a) (West 1995). *See Agbor,* 952 S.W.2d at 507.

To this end, the Texas Legislature in 1987 enacted section 5.06 of the TMPA. In addition to applying the HCQIA to peer review actions taken in Texas, section 5.06 provides:

(*l*) A cause of action does not accrue against the members, agents, or employees of a medical peer review committee or against the health-care entity from any act, statement, determination or recommendation made, or act reported, without malice, in the course of peer review as defined by this Act.

(m) A person, health-care entity, or medical peer review committee, that, without malice, participates in medical peer review actively or furnishes records, information, or assistance to a medical peer review committee or the board is immune from any civil liability arising from such an act.

Tex.Rev.Civ. Stat. Ann. art. 4495b § 5.06(*l*), (m) (repealed).

In 1989, the Texas Legislature enacted sections 161.031–161.033 of the Health and Safety Code, extending peer review immunity to members of a "medical committee":

A member of a medical committee is not liable for damages to a person for an action taken or recommendation made within the scope of the functions of the committee if the committee member acts without malice and in the reasonable belief that the action or recommendation is warranted by the facts known to the committee member.

Tex. Health & Safety Code Ann. § 161.033 (Vernon 1992). A medical committee is defined by the statute as "any committee, including a joint committee, of . . . a hospital." *Id.* § 161.031.

■ Texas has clearly taken the additional step of providing more protection to the activity of medical peer review than the HCQIA provides. *See Agbor,* 952 S.W.2d at 507. The qualified immunity from liability conferred by the TMPA and the Health and Safety Code can thus be defeated only by a showing that the defendant acted with actual malice. *See Agbor,* 952 S.W.2d at 509.

In *St. Luke's Episcopal Hospital v. Agbor,* the parents of an infant who was injured during its birth sued the hospital for negligently credentialing the delivery doctor. *Agbor,* 952 S.W.2d at 504. The trial court granted the hospital's motion for summary judgment on the ground that the TMPA provides immunity for credentialing decisions absent a showing of malice. *Id.* The court of appeals reversed the trial court and held that the trial court incorrectly interpreted the TMPA. *Id.* After analyzing sections 5.06(*l*) and (m) of the TMPA, the Supreme Court concluded that, "the plain meaning of the words used provides immunity from civil liability to a health-care entity for actions in the course of peer review, when such actions are done without malice." *Id.* at 506. Because it was not necessary to the disposition of the case, the court expressly refused to hold whether Texas law recognized a cause of action against a hospital for negligent credentialing. *Id.* at 508. The court simply held that such a cause of action would be subject to the qualified immunity provided by the TMPA, and would therefore require the plaintiffs to meet the "threshold standard of malice" prescribed by that statute. *Id.* at 508–09. Because the plaintiffs in *Agbor* failed to make such a showing, summary judgment for the defendant was proper. *Id.*

Likewise, and because it is not necessary to the disposition of the case at bar, we do not decide today whether a cause of action exists against a hospital for wrongful termination of a physician's staff privi-

leges. We conclude that such a claim, if it exists, constitutes an attack on actions taken "in the course of peer review" as defined by the TMPA. The hospital's summary judgment evidence establishes, and Roe does not contend otherwise, that the acts Roe complains of arose entirely in the context of a "medical peer review committee" engaged in the process of "medical peer review" under the TMPA. The hospital is therefore immune from civil liability absent a showing of actual malice.

The TMPA does not define the term "malice," but does provide that "[a]ny term, word, word of art, or phrase that is used in this Act and not otherwise defined in this Act has the meaning as is consistent with the common law. TEX.REV.CIV. STAT. ANN. art. 4495b, § 1.03(b) (repealed). The *Agbor* court adopted for this purpose the definition of "malice" provided by section 41.001 of the Civil Practices and Remedies Code, which defines that term as:

> (A) a specific intent by the defendant to cause substantial injury to the claimant; or
>
> (B) an act or omission:
>> (i) which when viewed objectively from the standpoint of the actor at the time of its occurrence involves an extreme degree of risk, considering the probability and magnitude of the potential harm to others; and
>> (ii) of which the actor has actual, subjective awareness of the risk involved, but nevertheless proceeds with conscious indifference to the rights, safety, or welfare of others.

*Agbor*, 952 S.W.2d at 506 (citing TEX. CIV. PRAC. & REM.CODE ANN. § 41.001(7) (Vernon 1999)).

As summary judgment evidence, the hospital offered the affidavits of Steven D. Porter, Dr. Todd Linstrum, and Sheila White. Each affidavit avers in relevant part that: 1) no information was ever ex-

changed during the peer review process that was known to be false; 2) each participant in the peer review process believed in good faith that the information provided by him or her was true; 3) each peer review action was taken in the reasonable belief that it was in furtherance of quality health care; and 4) each peer review action taken with regard to Roe was warranted by the facts known about him, after reasonable efforts to obtain these facts. If uncontroverted, these affidavits establish that the hospital acted without malice, as that term is defined under the common law and relevant statutes. We therefore turn to the issue of whether Roe has provided summary judgment evidence raising a genuine issue of material fact on the question of malice.

Roe's response to the hospital's motion for summary judgment included: (1) his affidavit ("Exhibit A"); (2) the affidavit of his attorney ("Exhibit B"); (3) a list of the accusations asserted by the hospital against him at the Fair Hearing ("Exhibit C"); (4) his response to the allegations made against him at the Fair Hearing ("Exhibit D"); and (5) the transcript of the Fair Hearing ("Exhibit E") [6].

*Exhibits C, D, and E*

The records and proceedings of a medical peer review committee are confidential and the communications made to a medical peer review committee are privileged, absent waiver of that privilege or a judge's preliminary finding that such records or proceedings are relevant to an anticompetitive action or a civil rights proceeding. TEX.REV.CIV. STAT. ANN. art. 4495b, §§ 5.06(g), (j) (Vernon 1999) (repealed); *Irving Healthcare Sys. v. Brooks*, 927 S.W.2d 12, 16 (Tex.1996). A plaintiff's allegation that the medical peer review committee acted with malice is not sufficient to destroy its privileges from discovery. *Irving*, 927 S.W.2d at 16. The Texas Supreme Court, in discussing a medical

---

**6.** Roe does not complain on appeal that the trial court erred when it sustained the hospital's objections to Exhibits A and B. Roe complains only about the trial court's exclusion of Exhibits C, D, and E.

peer review committee's privilege from discovery, stated that:

> Section 5.06 of article 4495b does not provide an exception to its confidentiality provisions whenever a plaintiff presents a prima facie case of malice. Read as a whole, the statute reflects the Legislature's conscious decision to allow an affected physician to bring claims against those who participate in the peer review process maliciously and without good faith, but nevertheless to maintain the confidentiality of the peer review process. That choice is a logical one. If a litigant could overcome the barrier to discovery by merely alleging malice, the privilege would be substantially emasculated. Requiring a prima facie showing of malice adds little protection.

*Id.* at 17.

The Court also foresaw potential problems for the litigants whose proof that the medical peer review committee acted with malice depended upon the medical peer review committee's privileged documents. *Id.* at 18. The Court stated that:

> There unquestionably is friction in this legislative scheme. It recognizes on the one hand that communications made to a medical peer review committee may be actionable, and on the other, forecloses some avenues of discovery of those communications. It may be possible that in some instances, the privilege from discovery in article 4495b could effectively bar proof of a medical practitioner's claim that a participant in the peer review process acted maliciously or without good faith. However, the terms of the statute do not mandate that result.... The statute does not prohibit discovery from alternative sources.

*Id.*

Roe claims that because he has presented a prima facie showing that the hospital acted with malice, he is entitled to discovery of the medical peer review committee's records and proceedings. We disagree. Roe has not demonstrated that the hospital waived its privilege from discovery, nor

is he asserting any of the causes of action exempt from the discovery privilege. *See* TEX.REV.CIV. STAT. ANN. art. 4495b, §§ 5.06(g), (j) (Vernon 1999) (repealed). Therefore, the trial court properly sustained the hospital's objections to Roe's Exhibits C, D, and E.

## CONCLUSION

We reserve for another time the question of whether Texas law recognizes a cause of action on behalf of a physician against a hospital for termination of staff privileges. Because it is undisputed that the actions complained of in this case occurred in a medical peer review proceeding, the hospital is immune from civil liability under the TMPA to the extent it acted without malice. Roe has offered no competent summary judgment evidence, either direct or circumstantial, which would raise a genuine fact issue to rebut the hospital's proof of the absence of malice in this case. Therefore, Roe cannot overcome the hurdle of section 5.06(*l*) of the Texas Medical Practice Act and summary judgment was proper. *See* TEX.REV. CIV. STAT. ANN. art. 4495b, § 5.06(*l*) (Vernon 1999) (repealed). We need not address whether the trial court could also have based its summary judgment order on grounds that the defendant established immunity under the Health and Safety Code, or the HCQIA.

The judgment of the trial court is affirmed.