NO. 07-02-0218-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL E

MARCH 10, 2003

_____

ERNESTO C. CHING, M.D., APPELLANT

V.

METHODIST CHILDREN'S HOSPITAL AND

METHODIST HOSPITAL OF LUBBOCK, TEXAS, APPELLEES

_____

FROM THE 72ND DISTRICT COURT OF LUBBOCK COUNTY;

NO. 95-552,924; HONORABLE BLAIR CHERRY, JR., JUDGE

_____

Before QUINN and REAVIS, JJ. and BOYD, S.J.[1]

**OPINION[2]**

Ernesto C. Ching, M.D. challenges a summary judgment that he take and recover

nothing against Methodist Hospital of Lubbock, Texas and Methodist Children's Hospital

---

[1]John T. Boyd, Chief Justice (Ret.), Seventh Court of Appeals, sitting by assignment.

[2]Tex. R. App. P. 47.2(a).

on his claims for breach of contract, violation of State antitrust law, denial of civil rights, defamation, and common law and statutory due process violations following his suspension of privileges to practice cardiothoracic surgery on children. By eleven issues, Ching contends the trial court erred (1) in awarding the Hospitals' summary judgment based on statutory immunity; (2) in denying his motion for partial summary judgment because the evidence demonstrated that the procedures employed by the Hospitals did not satisfy 42 U.S.C. § 11111(a); (3) in denying his motion for partial summary judgment because the evidence conclusively established that the Hospitals' bylaws together with the medical staffs' bylaws and his application for staff privileges constituted a contract with him; (4) in granting the Hospitals' no-evidence motion on the contract claim because there is evidence the Hospitals' conduct proximately caused him damage; (5) in dismissing his common law due process claim; (6) in dismissing his statutory due process claim; (7) in denying him the opportunity to file a response to the Hospitals' motion for summary judgment on antitrust matters late; (8) in granting the Hospitals' no-evidence motion on the antitrust claim; (9) in granting the Hospitals' summary judgment on his defamation claims; (10) the Hospitals are not immune from defamation under 42 U.S.C. § 1137(c); and (11) in dismissing his civil rights claims.

The Hospitals are separate Texas nonprofit corporations and Lubbock Methodist Health System, a separate Texas nonprofit corporation, is their common corporate member. Even though the Hospitals maintained separate staff, medical staff, bylaws, and medical executive committees, because Ching was entitled to a hearing at both Hospitals,

2

the partial suspension of his practice privileges prompting his lawsuit was heard before a joint hearing committee of the Hospitals.

Ching opened his practice in Lubbock in the mid-1970's and he and other pediatric heart specialists began performing most of the pediatric heart surgery cases at Children's Hospital shortly after it opened. Ching also practiced adult cardiac surgery. Between February 1993 through September 1994, Ching performed six DRG 108 procedures at Children's Hospital; however, four of his six pediatric patients died after the procedures in this category representing a 66 percent mortality rate. During the same time period, he performed three DRG 110 procedures on pediatric patients involving systematic pulmonary arterial shunt placement, but unfortunately these patients did not survive the procedures, representing a 100 percent mortality rate. After reviewing this data, three members of the Quality Management Committee of Children's Hospital met with Ching and on December 16, 1994, Ching and the Chief of Staff signed a document entitled Memorandum of Informal Counseling.[3] Among other things, Ching agreed that he would not perform systemic pulmonary arterial shunt placement or repair of tetralogy of fallot until an external review by a qualified pediatric cardiovascular surgeon could be completed and any necessary corrective action implemented "to the satisfaction of the Quality Management Committee."

---

[3]Ching did not contend that his approval of the memorandum was brought about by any fraud, accident, or mistake on the part of the Hospitals or seek to rescind or avoid his agreement to the memorandum.

Pursuant to the Memorandum of Informal Counseling, the Hospitals retained a pediatric cardiothoracic surgeon and a pediatric anesthesiologist, both from the University of Arkansas School of Medicine, to evaluate the pediatric surgical procedures that resulted in the death of seven patients. After reviewing the reports of the two external physicians, Children's Hospital's Quality Management Committee concluded that quality of care issues had been raised concerning the pediatric cardiac program and believing that immediate action was required to protect the welfare of patients, recommended temporary suspension of Ching's privileges for patients ages 0-18. On February 21, 1995, Ching received written notice that his privileges regarding patients ages 0-18 had been temporarily suspended pursuant to the bylaws and that the matter would be referred to Children's Hospital's Executive Committee which would appoint an investigative panel. Then, on February 22, Ching received copies of the external review reports of the Arkansas physicians and was provided written notice that the Executive Committees of the Hospitals would meet on March 1 to discuss the temporary suspension of his privileges and that he was invited to attend and provide a brief statement and summary of his views. Also, on February 22, he was notified that the investigatory panel would meet on February 23.

Ching met with Children's Hospital's panel on February 23 and met with Methodist Hospital's panel on February 24. At its meeting on February 28, Methodist Hospital's panel concluded that Ching's temporary suspension was warranted and recommended that his privileges remain suspended; however, at his meeting with Children's Hospital's panel an extension of time was requested. At its meeting on March 2, the Executive Committee of

4

Children's Hospital voted to continue Ching's pediatric surgical privileges and on March 3, the Executive Committee of Methodist Hospital met. The panel reviewed the available documentation and met with Ching for over five hours. Concluding that further investigation was necessary, the panel voted to continue the temporary suspension. In early March, Ching received written notice that the Executive Committees of both Hospitals voted to continue his pediatric surgical suspension indefinitely. Ching was also notified that a joint hearing on the Executive Committees' decisions would be conducted on April 6, 1995. After Ching retained counsel, his attorney was notified on April 28 that the hearing had been rescheduled for May 10. When the joint hearing committee was convened, Ching attended in person and by counsel and no objections were presented as to the physicians selected to serve on the hearing panel or the selection of a Lubbock attorney as the hearing officer. At the hearing, Ching's attorneys called, examined, and cross-examined witnesses and presented evidence. Upon conclusion of the hearing, the panel convened per Article IX of the By-Laws and issued its written report dated May 16, 1995. By paragraph three entitled Findings the panel found:

> Both sides presented opening statements, offered testimony, offered exhibits, cross-examined each other's witnesses, and made closing statements to the panel. After reviewing the exhibits of Dr. Ching, MCH, and Methodist, and after hearing the testimony of all witnesses and listening to the argument of counsel, and after considering the issues before it, the committee finds that:

> (1)    MCH and Methodist presented appropriate evidence in support of their adverse recommendations, specified above.

> (2) Dr. Ching has not shown that the charges or grounds involved lack any factual basis, and has not shown that the actions taken against him, or the reasons for those actions, are either arbitrary, or unreasonable, or capricious.

> (3) The panel finds that substantial evidence exists to support the actions of the chiefs of staff and Executive Committees of MCH and Methodist, and that they acted in good faith.

The report concluded that the panel recommended the suspensions remain in effect and that any reappointment of Ching exclude the suspended privileges.

Before we commence our review of the issues presented, subject to adaptations required to comply with the Health Care Quality Improvement Act (HCQIA), 42 U.S.C. § 11111, and section § 160.01 of the Texas Occupation Code Annotated (Vernon Pamph. 2003) discussed below, we set out the appropriate standard of review for our review.

## Summary Judgment Standard of Review
## Rule 166a(a) & (b)

In reviewing a summary judgment, this Court must apply the standards established in Nixon v. Mr. Property Management Co., 690 S.W.2d 546, 548-49 (Tex. 1985), which are:

> 1. The movant for summary judgment has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.

6

2.  In deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true.

3. Every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in its favor.

For a party to prevail on a motion for summary judgment, he must conclusively establish the absence of any genuine question of material fact and that he is entitled to judgment as a matter of law.  Tex. R. Civ. P. 166a(c).  A movant must either prove all essential elements of his claim, MMP, Ltd. v. Jones, 710 S.W.2d 59, 60 (Tex. 1986), or negate at least one essential element of the non-movant's cause of action.  Randall's Food Markets, Inc. v. Johnson, 891 S.W.2d 640, 644 (Tex. 1995).  Once the movant has established a right to summary judgment, the non-movant has the burden to respond to the motion for summary judgment and present to the trial court any issues that would preclude summary judgment.  City of Houston v. Clear Creek Basin Authority, 589 S.W.2d 671, 678 (Tex. 1979); Barbouti v. Hearst Corp., 927 S.W.2d 37, 64 (Tex.App.--Houston [1st Dist.] 1996, writ denied).  Issues which the non-movant contends preclude the granting of a summary judgment must be expressly presented to the trial court by written answer or other written response to the motion and not by mere reference to summary judgment evidence.  McConnell v. Southside School Dist., 858 S.W.2d 337, 341 (Tex. 1993). Issues not expressly presented to the trial court in writing shall not be considered on appeal as grounds for reversal.  Tex. R. Civ. P. 166a(c).  Further, all theories in support of or in opposition to a motion for summary judgment must be presented in writing to the trial court.

7

Casso v. Brand, 776 S.W.2d 551, 553 (Tex. 1989). When a summary judgment does not specify or state the grounds relied on, the summary judgment will be affirmed on appeal if any of the grounds presented in the motion are meritorious. Carr v. Brasher, 776 S.W.2d 567, 569 (Tex. 1989); Insurance Co. Of N. Am. v. Security Ins., 790 S.W.2d 407, 410 (Tex.App.--Houston [1st Dist.] 1990, no writ).

## No-Evidence Summary Judgment Standard of Review
## Rule 166a(i)

Rule 166a(i) entitled "No-Evidence Motion," provides that a party may move for summary judgment on the ground that there is no evidence of one or more essential elements of a claim or defense on which an adverse party would have the burden of proof at trial. When a summary judgment does not specify or state the grounds relied on, it will be affirmed on appeal if any of the grounds presented in the motion are meritorious. *Carr*, 776 S.W.2d at 569; *Insurance Co. Of N. Am.*, 790 S.W.2d at 410. Where a motion is presented under Rule 166a(i) asserting there is no evidence of one or more essential elements of the non-movant's claims upon which the non-movant would have the burden of proof at trial, the movant does not bear the burden of establishing each element of its own claim or defense as under subparagraph (a) or (b). Rather, although the non-moving party is not required to marshal its proof, it must present evidence that raises a genuine fact issue on the challenged elements. *See* Tex. R. Civ. P. 166a, Notes and Comments.

8

Because a no-evidence summary judgment is essentially a pretrial directed verdict, we apply the same legal sufficiency standard in reviewing a no-evidence summary judgment as we apply in reviewing a directed verdict. Roth v. FFP Operating Partners, 994 S.W.2d 190, 195 (Tex.App.--Amarillo 1999, pet. denied); Jackson v. Fiesta Mart, Inc., 979 S.W.2d 68, 70 (Tex.App.--Austin 1998, no pet.). Thus, our task as an appellate court is to ascertain whether the non-movant produced any evidence of probative force to raise a fact issue on the material questions presented. *Id*. We consider all the evidence in the light most favorable to the party against whom the no-evidence summary judgment was rendered, disregarding all contrary evidence and inferences. Merrill Dow Pharmaceuticals v. Havner, 953 S.W.2d 706, 711 (Tex. 1997), *cert. denied*, 523 U.S. 1119, 118 S.Ct. 1799, 140 L.Ed.2d 939 (1998). A no-evidence summary judgment is improperly granted if the non-movant presents more than a scintilla of probative evidence to raise a genuine issue of material fact. *Fiesta Mart, Inc.*, 979 S.W.2d at 70-71. More than a scintilla of evidence exists when the evidence "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *Havner*, 953 S.W.2d at 711.

Where, as here, both sides move for summary judgment and the trial court grants one motion and denies the other, on appeal, we review the summary judgment evidence of both sides and determine all questions presented, and render judgment the trial court should have rendered. Bradley v. State ex rel. White, 990 S.W.2d 245, 247 (Tex. 1999). Greg Lair, Inc. v. Spring, 23 S.W.3d 443, 446 (Tex.App.--Amarillo 2000, pet. denied). Moreover, because neither party presents any objections to the summary judgment

9

evidence, we may consider all of the summary judgment evidence in the record. Grand Prairie Independent School District v. Vaughan, 792 S.W.2d 944, 945 (Tex. 1990); Calp v. Tau Kappa Epsilon Fraternity, 75 S.W.3d 641, 645-46 (Tex.App.--Amarillo 2002, pet. denied).

**Analysis**

By his first issue, Ching contends the trial court erred in awarding the Hospitals' summary judgment based on statutory immunity, contending that (a) the record does not conclusively establish that the procedures used in suspending his privileges were fair, as required by 42 U.S.C. § 11111(a) and (b), the immunity provided by section160.010 of the Occupation Code, formerly Tex. Rev. Civ. Stat. Ann. art. 4495b § 5.06(1)[4], "vanished" because there was summary judgment evidence that the Hospitals acted with malice. Then, by his second issue, he contends the trial court erred in denying his motion for partial summary judgment because the undisputed evidence established as a matter of law the procedures employed by the Hospitals did not satisfy 42 U.S.C. §11111(a). We disagree.

As grounds for their joint motion for summary judgment, the Hospitals contended that they were entitled to summary judgment because they were immune from liability (1) under 42 U.S.C. § 11111 on all of Ching's claims except his civil rights claim, and (2) on all of Ching's claims under section160.010 of the Occupation Code. By his response, Ching contended the Hospitals were not entitled to immunity because (1) their actions did not

---

[4]Recodified with minor non-substantive changes.

10

conform to HCQIA's fair procedures requirements and to the Texas statute, and (2) the Hospitals acted with malice in suspending him.

Grounds alleged by Ching in his motion for partial summary judgment included (1) the bylaws are a contract, and (2) the Hospitals did not follow "fair procedures" as required by HCQIA. In response, the Hospitals alleged that breach of contract claims do not apply because (1) the medical staff bylaws do not create contractual obligations, and (2) Ching failed to present sufficient summary judgment evidence to rebut the statutory presumption under 42 U.S.C. § 11112(a) necessary for immunity.

**Medical Peer Review**
HCQIA, 42 U.S.C. § 11111 and Tex. Occ. Code Ann. § 160.010

In addition to the duty to exercise reasonable care in the selection of its medical staff and in granting specialized privileges, a hospital has a common law duty to periodically monitor and review the competency of the members of its medical staff. Park North General Hosp. v. Hickman, 703 S.W.2d 262, 264 (Tex.App.-- San Antonio 1985, writ ref'd n.r.e.). Also, public policy encourages hospitals to conduct medical peer reviews of physicians. *See* 42 U.S.C. § 11101(3) and (5). Accordingly, in conducting periodic peer reviews of its medical staff, a hospital is entitled to statutory immunities from civil liability under HCQIA, 42 U.S.C. § 11111(a) and section160.010 of the Occupation Code.

A hospital as a professional review body "shall not be liable in damages under any law of the United States or of any State (or political subdivision thereof) with respect to the

11

action," 42 U.S.C. § 11111(a)(1), except civil rights actions. Under this provision, the peer review action must be taken:

> (1) in the reasonable belief that the action was in furtherance of quality health care,
>
> (2) after a reasonable effort to obtain the facts of the matter,
>
> (3) after adequate notice and hearing procedures are afforded to the physician involved or after such other procedures as are fair to the physician under the circumstances, and
>
> (4) in the reasonable belief that the action was warranted by the facts known after such reasonable effort to obtain facts and after meeting the requirement of paragraph (3).

42 U.S.C. § 11112(a); Sugarbaker v. SSM Health Care, 190 F.3d 906, 912 (8th Cir. 1999).

Although the presumption is rebuttable, Bryan v. James E. Holmes Regional Medical Center, 33 F.3d 1318, 1323 (11th Cir. 1994), it includes a presumption that a professional review action meets each of the four prongs of section 11112(a), unless the presumption is rebutted by a preponderance of evidence. Brader v. Allegheny Gen. Hosp., 167 F.3d 832, 839 (3rd Cir. 1999).

Texas has granted additional immunities to hospitals and others participating in professional medical peer review. *See* St. Luke's Episcopal Hosp. v. Agbor, 952 S.W.2d 503, 507 (Tex. 1997). Subsections (b) and (c) of section 160.010 provide in relevant part:

12

(b) A cause of action does *not accrue* against a . . . health care entity from any act, statement, determination, or recommendation made, or act reported, *without malice*, in the course of medical peer review.

(c) A . . . health care entity that, *without malice*, participates in medical peer review or furnishes records, information, or assistance to a medical peer review committee or the board *is immune* from *any* civil liability arising from that act.

(Emphasis added).[5] Because the judgment does not specify the grounds relied on or as here whether it was based on the immunity provided by the HCQIA or the Texas statute, we will conduct our analysis based on section 160.010, as was done in Roe v. Walls Regional Hosp., 21 S.W.3d 647, 655 (Tex.App.--Waco 2000, no pet.).

In *Agbor*, 952 S.W.2d at 509, in discussing the former provision before recodification, the Court held:

Accordingly, we hold that the Texas Act's immunity provisions prescribe a threshold standard of malice to state a cause of action against a hospital for its credentialing activities.

Ching argues that this immunity "vanished" because the Hospitals acted maliciously. Because the existence of malice is essential to state a cause of action and the law presumes good faith and want of malice where a qualified privilege is involved, *see* Maewal v. Adventist Health Systems, 868 S.W.2d 886, 893 (Tex.App.--Forth Worth 1993, writ denied), Ching had the burden to present more than a scintilla of probative evidence of

---

[5]Because section 160.010 is not conditioned upon compliance with the standards of professional review set out in 42 U.S.C. § 11112(a), we limit our review of the evidence to the question of malice.

13

malice sufficient to raise a genuine issue of fact. *Fiesta Mart, Inc.*, 979 S.W.2d at 70; *Havner*, 953 S.W.2d at 711.

Focusing on the question of malice, because the Hospitals have a duty to conduct medical peer reviews and public policy favors reviews, we hold that the commencement of a review, standing alone, cannot constitute evidence of malice. Also, although the Hospitals can "act only through agents of some character," Mobil Oil Corp. v. Ellender, 968 S.W.2d 917, 921 (Tex. 1998), Ching's summary judgment evidence does not identify the officers or agents of the two corporations whom he contends introduced the element of malice into the medical peer review process. Further, Ching does not contend that the physicians who served on the investigative panel were officers or agents of the Hospitals, that they were biased or had any ill will or malice toward him, or that their decision was the product of malice. Moreover, as a general rule, physicians are considered to be independent contractors with regard to the hospitals at which they enjoy staff privileges. Baptist Memorial Hosp. System v. Sampson, 969 S.W.2d 945, 948 (Tex. 1998).

We do not agree with Ching's contention that the use of two physicians from Arkansas in the peer review process constitutes evidence of malice for several reasons. First, the selection of physicians from another state removed any local bias, *i.e.* personality or political conflicts (professional or otherwise) among staff members, or local economic factors from the process and helped ensure that the medical decisions of the physicians who served on the Quality Management Committee were not affected by any ill will or

14

malice, but were in furtherance of quality health care. *See* 42 U.S.C. § 11112(a)(1). Next, contrary to his contention in his response to the Hospitals' motion for summary judgment that their exclusive reliance on the reports of the two Arkansas physicians was evidence of malice, the contention is logically inconsistent. The exclusive reliance on reviews from "outside" physicians who were removed from any potential bias cannot logically infer or imply malice.

Finally, Ching agreed to the use of "external" physicians. The summary judgment evidence includes the entire text of a Memorandum of Informal Counseling dated December 16, 1994, by which the Chief of Staff of Children's Hospital and two other members recommended that "an *external* review, by a qualified pediatric cardiovascular surgeon, be conducted to evaluate the potential causes for the high mortality rates." By his signature on the memorandum, Ching agreed to cease performing the referenced procedures "until *such* investigation can be completed and any necessary corrective action implemented to the satisfaction of the Quality Management Committee." (Emphasis added).

Upon the request of Ching's attorneys, the hearing originally scheduled for April 28 was rescheduled for May 10. The findings of the panel as shown by its May 16, 1995, report,[6] as relevant to the malice question concluded that Ching had not shown that the actions were arbitrary, unreasonable, or capricious and that the Executive Committees of

---

[6]The May 16, 1995 report was included in the summary judgment evidence.

15

the Hospitals acted in good faith. However, Ching does not challenge these findings by argument or direct our attention to any summary judgment evidence to the contrary.

The term "malice" is not defined for purposes of the Act. Ching suggests that the definition set out in *Agbor*, 952 S.W.2d at 506, is controlling while the Hospitals contend that the definition at *Maewal*, 868 S.W.2d at 893, is controlling. However, because the summary judgment evidence provided by Ching is insufficient to overcome the presumption of the absence of malice to medical peer review proceedings, *id.*, under either definition, we need not decide which of the suggested definitions is controlling here.[7] Accordingly, issues one and two are overruled. Ching's remaining issues concern claims arising out of the medical peer review process; thus, our disposition of the first two issues is also controlling on his remaining issues and we need not address them or the summary judgment evidence that he presented. *Roe*, 21 S.W.3d at 655.

Accordingly, the judgment of the trial court is affirmed.

Don H. Reavis
Justice

---

[7]Because public policy encourages medical peer reviews, *see* 42 U.S.C. § 11101(3) and (5), a definition of malice fashioned to encompass the requirement of a "reasonable belief that the action was in the furtherance of quality health care" requirement of 42 U.S.C. § 11112(a)(1) may be more appropriate than a definition adapted from typical tort cases.