CHING V. METHODIST CHILDREN'S HOSP ET AL



NO. 07-02-0218-CV



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL E



MARCH 10, 2003



______________________________



ERNESTO C. CHING, M.D., APPELLANT



V.



METHODIST CHILDREN'S HOSPITAL AND



METHODIST HOSPITAL OF LUBBOCK, TEXAS, APPELLEES


_________________________________



FROM THE 72ND DISTRICT COURT OF LUBBOCK COUNTY;



NO. 95-552,924; HONORABLE BLAIR CHERRY, JR., JUDGE



_______________________________




Before QUINN and REAVIS, JJ. and BOYD, S.J. (1)



OPINION (2)




 Ernesto C. Ching, M.D. challenges a summary judgment that he take and recover
nothing against Methodist Hospital of Lubbock, Texas and Methodist Children's Hospital
on his claims for breach of contract, violation of State antitrust law, denial of civil rights,
defamation, and common law and statutory due process violations following his suspension
of privileges to practice cardiothoracic surgery on children. By eleven issues, Ching
contends the trial court erred (1) in awarding the Hospitals' summary judgment based on
statutory immunity; (2) in denying his motion for partial summary judgment because the
evidence demonstrated that the procedures employed by the Hospitals did not satisfy 42
U.S.C. § 11111(a); (3) in denying his motion for partial summary judgment because the
evidence conclusively established that the Hospitals' bylaws together with the medical
staffs' bylaws and his application for staff privileges constituted a contract with him; (4) in
granting the Hospitals' no-evidence motion on the contract claim because there is evidence
the Hospitals' conduct proximately caused him damage; (5) in dismissing his common law
due process claim; (6) in dismissing his statutory due process claim; (7) in denying him the
opportunity to file a response to the Hospitals' motion for summary judgment on antitrust
matters late; (8) in granting the Hospitals' no-evidence motion on the antitrust claim; (9) in
granting the Hospitals' summary judgment on his defamation claims; (10) the Hospitals are
not immune from defamation under 42 U.S.C. § 1137(c); and (11) in dismissing his civil
rights claims. 

 The Hospitals are separate Texas nonprofit corporations and Lubbock Methodist
Health System, a separate Texas nonprofit corporation, is their common corporate
member. Even though the Hospitals maintained separate staff, medical staff, bylaws, and
medical executive committees, because Ching was entitled to a hearing at both Hospitals,
the partial suspension of his practice privileges prompting his lawsuit was heard before a
joint hearing committee of the Hospitals.

 Ching opened his practice in Lubbock in the mid-1970's and he and other pediatric
heart specialists began performing most of the pediatric heart surgery cases at Children's
Hospital shortly after it opened. Ching also practiced adult cardiac surgery. Between
February 1993 through September 1994, Ching performed six DRG 108 procedures at
Children's Hospital; however, four of his six pediatric patients died after the procedures in
this category representing a 66 percent mortality rate. During the same time period, he
performed three DRG 110 procedures on pediatric patients involving systematic pulmonary
arterial shunt placement, but unfortunately these patients did not survive the procedures,
representing a 100 percent mortality rate. After reviewing this data, three members of the
Quality Management Committee of Children's Hospital met with Ching and on December
16, 1994, Ching and the Chief of Staff signed a document entitled Memorandum of
Informal Counseling. (3) Among other things, Ching agreed that he would not perform
systemic pulmonary arterial shunt placement or repair of tetralogy of fallot until an external
review by a qualified pediatric cardiovascular surgeon could be completed and any
necessary corrective action implemented "to the satisfaction of the Quality Management
Committee." 

 Pursuant to the Memorandum of Informal Counseling, the Hospitals retained a
pediatric cardiothoracic surgeon and a pediatric anesthesiologist, both from the University
of Arkansas School of Medicine, to evaluate the pediatric surgical procedures that resulted 
in the death of seven patients. After reviewing the reports of the two external physicians,
Children's Hospital's Quality Management Committee concluded that quality of care issues
had been raised concerning the pediatric cardiac program and believing that immediate
action was required to protect the welfare of patients, recommended temporary suspension
of Ching's privileges for patients ages 0-18. On February 21, 1995, Ching received written
notice that his privileges regarding patients ages 0-18 had been temporarily suspended
pursuant to the bylaws and that the matter would be referred to Children's Hospital's
Executive Committee which would appoint an investigative panel. Then, on February 22,
Ching received copies of the external review reports of the Arkansas physicians and was
provided written notice that the Executive Committees of the Hospitals would meet on
March 1 to discuss the temporary suspension of his privileges and that he was invited to
attend and provide a brief statement and summary of his views. Also, on February 22, he
was notified that the investigatory panel would meet on February 23. 

 Ching met with Children's Hospital's panel on February 23 and met with Methodist
Hospital's panel on February 24. At its meeting on February 28, Methodist Hospital's panel
concluded that Ching's temporary suspension was warranted and recommended that his
privileges remain suspended; however, at his meeting with Children's Hospital's panel an
extension of time was requested. At its meeting on March 2, the Executive Committee of
Children's Hospital voted to continue Ching's pediatric surgical privileges and on March 3,
the Executive Committee of Methodist Hospital met. The panel reviewed the available
documentation and met with Ching for over five hours. Concluding that further
investigation was necessary, the panel voted to continue the temporary suspension. In
early March, Ching received written notice that the Executive Committees of both Hospitals
voted to continue his pediatric surgical suspension indefinitely. Ching was also notified that
a joint hearing on the Executive Committees' decisions would be conducted on April 6,
1995. After Ching retained counsel, his attorney was notified on April 28 that the hearing
had been rescheduled for May 10. When the joint hearing committee was convened,
Ching attended in person and by counsel and no objections were presented as to the
physicians selected to serve on the hearing panel or the selection of a Lubbock attorney
as the hearing officer. At the hearing, Ching's attorneys called, examined, and cross-examined witnesses and presented evidence. Upon conclusion of the hearing, the panel
convened per Article IX of the By-Laws and issued its written report dated May 16, 1995. 
By paragraph three entitled Findings the panel found:

 Both sides presented opening statements, offered testimony, offered
exhibits, cross-examined each other's witnesses, and made closing
statements to the panel. After reviewing the exhibits of Dr. Ching, MCH, and
Methodist, and after hearing the testimony of all witnesses and listening to
the argument of counsel, and after considering the issues before it, the
committee finds that:



 MCH and Methodist presented appropriate evidence in
support of their adverse recommendations, specified
above.
 Dr. Ching has not shown that the charges or grounds
involved lack any factual basis, and has not shown that
the actions taken against him, or the reasons for those
actions, are either arbitrary, or unreasonable, or
capricious.

 The panel finds that substantial evidence exists to
support the actions of the chiefs of staff and Executive
Committees of MCH and Methodist, and that they acted
in good faith.



The report concluded that the panel recommended the suspensions remain in effect and
that any reappointment of Ching exclude the suspended privileges.

 Before we commence our review of the issues presented, subject to adaptations
required to comply with the Health Care Quality Improvement Act (HCQIA), 42 U.S.C. §
11111, and section § 160.01 of the Texas Occupation Code Annotated (Vernon Pamph.
2003) discussed below, we set out the appropriate standard of review for our review. 

Summary Judgment Standard of Review


Rule 166a(a) & (b)



 In reviewing a summary judgment, this Court must apply the standards established
in Nixon v. Mr. Property Management Co., 690 S.W.2d 546, 548-49 (Tex. 1985), which
are:

 1. The movant for summary judgment has the burden of showing that there
is no genuine issue of material fact and that it is entitled to judgment as a
matter of law.


 2. In deciding whether there is a disputed material fact issue precluding
summary judgment, evidence favorable to the non-movant will be taken as
true.


 3. Every reasonable inference must be indulged in favor of the non-movant
and any doubts resolved in its favor.

 

 For a party to prevail on a motion for summary judgment, he must conclusively
establish the absence of any genuine question of material fact and that he is entitled to
judgment as a matter of law. Tex. R. Civ. P. 166a(c). A movant must either prove all
essential elements of his claim, MMP, Ltd. v. Jones, 710 S.W.2d 59, 60 (Tex. 1986), or
negate at least one essential element of the non-movant's cause of action. Randall's Food
Markets, Inc. v. Johnson, 891 S.W.2d 640, 644 (Tex. 1995). Once the movant has
established a right to summary judgment, the non-movant has the burden to respond to
the motion for summary judgment and present to the trial court any issues that would
preclude summary judgment. City of Houston v. Clear Creek Basin Authority, 589 S.W.2d 
671, 678 (Tex. 1979); Barbouti v. Hearst Corp., 927 S.W.2d 37, 64 (Tex.App.--Houston [1st
Dist.] 1996, writ denied). Issues which the non-movant contends preclude the granting of
a summary judgment must be expressly presented to the trial court by written answer or
other written response to the motion and not by mere reference to summary judgment
evidence. McConnell v. Southside School Dist., 858 S.W.2d 337, 341 (Tex. 1993). Issues
not expressly presented to the trial court in writing shall not be considered on appeal as
grounds for reversal. Tex. R. Civ. P. 166a(c). Further, all theories in support of or in
opposition to a motion for summary judgment must be presented in writing to the trial court. 
Casso v. Brand, 776 S.W.2d 551, 553 (Tex. 1989). When a summary judgment does not
specify or state the grounds relied on, the summary judgment will be affirmed on appeal
if any of the grounds presented in the motion are meritorious. Carr v. Brasher, 776 S.W.2d
567, 569 (Tex. 1989); Insurance Co. Of N. Am. v. Security Ins., 790 S.W.2d 407, 410
(Tex.App.--Houston [1st Dist.] 1990, no writ).

No-Evidence Summary Judgment Standard of Review


Rule 166a(i)



 Rule 166a(i) entitled "No-Evidence Motion," provides that a party may move for
summary judgment on the ground that there is no evidence of one or more essential
elements of a claim or defense on which an adverse party would have the burden of proof
at trial. When a summary judgment does not specify or state the grounds relied on, it will
be affirmed on appeal if any of the grounds presented in the motion are meritorious. Carr,
776 S.W.2d at 569; Insurance Co. Of N. Am., 790 S.W.2d at 410. Where a motion is
presented under Rule 166a(i) asserting there is no evidence of one or more essential
elements of the non-movant's claims upon which the non-movant would have the burden
of proof at trial, the movant does not bear the burden of establishing each element of its
own claim or defense as under subparagraph (a) or (b). Rather, although the non-moving
party is not required to marshal its proof, it must present evidence that raises a genuine
fact issue on the challenged elements. See Tex. R. Civ. P. 166a, Notes and Comments.

 Because a no-evidence summary judgment is essentially a pretrial directed verdict,
we apply the same legal sufficiency standard in reviewing a no-evidence summary
judgment as we apply in reviewing a directed verdict. Roth v. FFP Operating Partners, 994
S.W.2d 190, 195 (Tex.App.--Amarillo 1999, pet. denied); Jackson v. Fiesta Mart, Inc., 979
S.W.2d 68, 70 (Tex.App.--Austin 1998, no pet.). Thus, our task as an appellate court is
to ascertain whether the non-movant produced any evidence of probative force to raise a
fact issue on the material questions presented. Id. We consider all the evidence in the
light most favorable to the party against whom the no-evidence summary judgment was
rendered, disregarding all contrary evidence and inferences. Merrill Dow Pharmaceuticals
v. Havner, 953 S.W.2d 706, 711 (Tex. 1997), cert. denied, 523 U.S. 1119, 118 S.Ct. 1799,
140 L.Ed.2d 939 (1998). A no-evidence summary judgment is improperly granted if the
non-movant presents more than a scintilla of probative evidence to raise a genuine issue
of material fact. Fiesta Mart, Inc., 979 S.W.2d at 70-71. More than a scintilla of evidence
exists when the evidence "rises to a level that would enable reasonable and fair-minded
people to differ in their conclusions." Havner, 953 S.W.2d at 711.

 Where, as here, both sides move for summary judgment and the trial court grants
one motion and denies the other, on appeal, we review the summary judgment evidence
of both sides and determine all questions presented, and render judgment the trial court
should have rendered. Bradley v. State ex rel. White, 990 S.W.2d 245, 247 (Tex. 1999). 
Greg Lair, Inc. v. Spring, 23 S.W.3d 443, 446 (Tex.App.--Amarillo 2000, pet. denied). 
Moreover, because neither party presents any objections to the summary judgment
evidence, we may consider all of the summary judgment evidence in the record. Grand
Prairie Independent School District v. Vaughan, 792 S.W.2d 944, 945 (Tex. 1990); Calp v.
Tau Kappa Epsilon Fraternity, 75 S.W.3d 641, 645-46 (Tex.App.--Amarillo 2002, pet.
denied).

Analysis


 By his first issue, Ching contends the trial court erred in awarding the Hospitals'
summary judgment based on statutory immunity, contending that (a) the record does not
conclusively establish that the procedures used in suspending his privileges were fair, as
required by 42 U.S.C. § 11111(a) and (b), the immunity provided by section160.010 of the
Occupation Code, formerly Tex. Rev. Civ. Stat. Ann. art. 4495b § 5.06(1) (4), "vanished"
because there was summary judgment evidence that the Hospitals acted with malice. 
Then, by his second issue, he contends the trial court erred in denying his motion for partial
summary judgment because the undisputed evidence established as a matter of law the
procedures employed by the Hospitals did not satisfy 42 U.S.C. §11111(a). We disagree.

 As grounds for their joint motion for summary judgment, the Hospitals contended that
they were entitled to summary judgment because they were immune from liability (1) under
42 U.S.C. § 11111 on all of Ching's claims except his civil rights claim, and (2) on all of
Ching's claims under section160.010 of the Occupation Code. By his response, Ching
contended the Hospitals were not entitled to immunity because (1) their actions did not
conform to HCQIA's fair procedures requirements and to the Texas statute, and (2) the
Hospitals acted with malice in suspending him.

 Grounds alleged by Ching in his motion for partial summary judgment included (1)
the bylaws are a contract, and (2) the Hospitals did not follow "fair procedures" as required
by HCQIA. In response, the Hospitals alleged that breach of contract claims do not apply
because (1) the medical staff bylaws do not create contractual obligations, and (2) Ching
failed to present sufficient summary judgment evidence to rebut the statutory presumption
under 42 U.S.C. § 11112(a) necessary for immunity.

Medical Peer Review 


HCQIA, 42 U.S.C. § 11111 and Tex. Occ. Code Ann. § 160.010



 In addition to the duty to exercise reasonable care in the selection of its medical
staff and in granting specialized privileges, a hospital has a common law duty to
periodically monitor and review the competency of the members of its medical staff. Park
North General Hosp. v. Hickman, 703 S.W.2d 262, 264 (Tex.App.-- San Antonio 1985, writ
ref'd n.r.e.). Also, public policy encourages hospitals to conduct medical peer reviews of
physicians. See 42 U.S.C. § 11101(3) and (5). Accordingly, in conducting periodic peer
reviews of its medical staff, a hospital is entitled to statutory immunities from civil liability
under HCQIA, 42 U.S.C. § 11111(a) and section160.010 of the Occupation Code. 

 A hospital as a professional review body "shall not be liable in damages under any
law of the United States or of any State (or political subdivision thereof) with respect to the
action," 42 U.S.C. § 11111(a)(1), except civil rights actions. Under this provision, the peer
review action must be taken:

 (1) in the reasonable belief that the action was in furtherance
of quality health care,


 (2) after a reasonable effort to obtain the facts of the matter,

 

 (3) after adequate notice and hearing procedures are afforded
to the physician involved or after such other procedures as are
fair to the physician under the circumstances, and


 (4) in the reasonable belief that the action was warranted by
the facts known after such reasonable effort to obtain facts and
after meeting the requirement of paragraph (3). 


42 U.S.C. § 11112(a); Sugarbaker v. SSM Health Care, 190 F.3d 906, 912 (8th Cir. 1999).

 Although the presumption is rebuttable, Bryan v. James E. Holmes Regional
Medical Center, 33 F.3d 1318, 1323 (11th Cir. 1994), it includes a presumption that a
professional review action meets each of the four prongs of section 11112(a), unless the
presumption is rebutted by a preponderance of evidence. Brader v. Allegheny Gen. Hosp.,
167 F.3d 832, 839 (3rd Cir. 1999).

 Texas has granted additional immunities to hospitals and others participating in
professional medical peer review. See St. Luke's Episcopal Hosp. v. Agbor, 952 S.W.2d
503, 507 (Tex. 1997). Subsections (b) and (c) of section 160.010 provide in relevant part:

 (b) A cause of action does not accrue against a . . . health care entity from
any act, statement, determination, or recommendation made, or act reported,
without malice, in the course of medical peer review.

 (c) A . . . health care entity that, without malice, participates in medical peer
review or furnishes records, information, or assistance to a medical peer
review committee or the board is immune from any civil liability arising from
that act.


(Emphasis added). (5) Because the judgment does not specify the grounds relied on or as
here whether it was based on the immunity provided by the HCQIA or the Texas statute,
we will conduct our analysis based on section 160.010, as was done in Roe v. Walls
Regional Hosp., 21 S.W.3d 647, 655 (Tex.App.--Waco 2000, no pet.). 

 In Agbor, 952 S.W.2d at 509, in discussing the former provision before
recodification, the Court held:

 Accordingly, we hold that the Texas Act's immunity provisions prescribe a
threshold standard of malice to state a cause of action against a hospital for
its credentialing activities. 


Ching argues that this immunity "vanished" because the Hospitals acted maliciously. 
Because the existence of malice is essential to state a cause of action and the law
presumes good faith and want of malice where a qualified privilege is involved, see Maewal
v. Adventist Health Systems, 868 S.W.2d 886, 893 (Tex.App.--Forth Worth 1993, writ
denied), Ching had the burden to present more than a scintilla of probative evidence of
malice sufficient to raise a genuine issue of fact. Fiesta Mart, Inc., 979 S.W.2d at 70;
Havner, 953 S.W.2d at 711. 

 Focusing on the question of malice, because the Hospitals have a duty to conduct
medical peer reviews and public policy favors reviews, we hold that the commencement 
of a review, standing alone, cannot constitute evidence of malice. Also, although the
Hospitals can "act only through agents of some character," Mobil Oil Corp. v. Ellender, 968
S.W.2d 917, 921 (Tex. 1998), Ching's summary judgment evidence does not identify the 
officers or agents of the two corporations whom he contends introduced the element of
malice into the medical peer review process. Further, Ching does not contend that the
physicians who served on the investigative panel were officers or agents of the Hospitals,
that they were biased or had any ill will or malice toward him, or that their decision was the
product of malice. Moreover, as a general rule, physicians are considered to be
independent contractors with regard to the hospitals at which they enjoy staff privileges.
Baptist Memorial Hosp. System v. Sampson, 969 S.W.2d 945, 948 (Tex. 1998).

 We do not agree with Ching's contention that the use of two physicians from
Arkansas in the peer review process constitutes evidence of malice for several reasons. 
First, the selection of physicians from another state removed any local bias, i.e. personality
or political conflicts (professional or otherwise) among staff members, or local economic
factors from the process and helped ensure that the medical decisions of the physicians
who served on the Quality Management Committee were not affected by any ill will or
malice, but were in furtherance of quality health care. See 42 U.S.C. § 11112(a)(1). Next,
contrary to his contention in his response to the Hospitals' motion for summary judgment
that their exclusive reliance on the reports of the two Arkansas physicians was evidence
of malice, the contention is logically inconsistent. The exclusive reliance on reviews from
"outside" physicians who were removed from any potential bias cannot logically infer or
imply malice.

 Finally, Ching agreed to the use of "external" physicians. The summary judgment
evidence includes the entire text of a Memorandum of Informal Counseling dated
December 16, 1994, by which the Chief of Staff of Children's Hospital and two other
members recommended that "an external review, by a qualified pediatric cardiovascular
surgeon, be conducted to evaluate the potential causes for the high mortality rates." By
his signature on the memorandum, Ching agreed to cease performing the referenced
procedures "until such investigation can be completed and any necessary corrective action
implemented to the satisfaction of the Quality Management Committee." (Emphasis
added). 

 Upon the request of Ching's attorneys, the hearing originally scheduled for April 28
was rescheduled for May 10. The findings of the panel as shown by its May 16, 1995,
report, (6) as relevant to the malice question concluded that Ching had not shown that the
actions were arbitrary, unreasonable, or capricious and that the Executive Committees of
the Hospitals acted in good faith. However, Ching does not challenge these findings by
argument or direct our attention to any summary judgment evidence to the contrary.

 The term "malice" is not defined for purposes of the Act. Ching suggests that the
definition set out in Agbor, 952 S.W.2d at 506, is controlling while the Hospitals contend
that the definition at Maewal, 868 S.W.2d at 893, is controlling. However, because the
summary judgment evidence provided by Ching is insufficient to overcome the presumption
of the absence of malice to medical peer review proceedings, id., under either definition,
we need not decide which of the suggested definitions is controlling here. (7) Accordingly,
issues one and two are overruled. Ching's remaining issues concern claims arising out of
the medical peer review process; thus, our disposition of the first two issues is also
controlling on his remaining issues and we need not address them or the summary
judgment evidence that he presented. Roe, 21 S.W.3d at 655.

 Accordingly, the judgment of the trial court is affirmed.

 Don H. Reavis

 Justice

1. John T. Boyd, Chief Justice (Ret.), Seventh Court of Appeals, sitting by assignment.
2. Tex. R. App. P. 47.2(a).
3. Ching did not contend that his approval of the memorandum was brought about by
any fraud, accident, or mistake on the part of the Hospitals or seek to rescind or avoid his
agreement to the memorandum.
4. Recodified with minor non-substantive changes.
5. Because section 160.010 is not conditioned upon compliance with the standards
of professional review set out in 42 U.S.C. § 11112(a), we limit our review of the evidence
to the question of malice. 
6. The May 16, 1995 report was included in the summary judgment evidence.
7. Because public policy encourages medical peer reviews, see 42 U.S.C. § 11101(3)
and (5), a definition of malice fashioned to encompass the requirement of a "reasonable
belief that the action was in the furtherance of quality health care" requirement of 42 U.S.C.
§ 11112(a)(1) may be more appropriate than a definition adapted from typical tort cases.